B. Wayne **SUMMERS**, Peter Abadie, Jr., and Robert A. Parma, Appellants,

v.

**WELLTECH, INC., Appellee.**

No. 01–94–01156–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 5, 1996.

irrelevant to this cause.

---

**2.** The 1995 amendment to section 361.321(a), which took effect after the Cities filed suit, is

Don M. Kennedy, Larry R. Boyd, Houston, Peter J. Abadie, Jr., Covington, for Appellants.

James P. Keenan, Randall Owens, Houston, for Appellee.

Before TAFT and PRICE,* JJ.

## OPINION ON REHEARING

TAFT, Justice.

We deny appellee's motion for rehearing, but we withdraw our original opinion of August 15, 1996, and substitute the following opinion in its place. This case is based upon allegations of securities fraud during the sale of stock between two companies. The trial court rendered judgment for the plaintiff, WellTech, Inc., and ordered the defendants, control persons of Vanguard Environmental, Inc. (Vanguard), to pay approximately 1.5 million dollars. The control persons appeal that judgment. Among other issues presented, we address whether a control person may be held jointly and severally liable for securities fraud, without the joinder of the controlled entity as a defendant to the lawsuit. We affirm.

### Facts

In 1991, appellants, Peter Abadie, Jr., Robert A. Parma, and B. Wayne Summers,[1] formed a company named Vanguard Environmental, Inc. Vanguard was an environmental remediation company, and its key asset was a machine, the TDS–10, designed to measure soil contamination. Summers was the inventor of the TDS–10. Parma and Abadie controlled the finances, management, and marketing of Vanguard.

In late 1991, Vanguard commenced negotiations to secure investors in the company. Abadie had the responsibility of negotiating with all prospective investors. WellTech, through its president, Doug Thompson, negotiated with all three defendants. They agreed that WellTech would pay 1.25 million dollars for 50 percent of Vanguard's stock.

In 1992, Vanguard management discovered that Summers had diverted company funds. On December 9, 1991, Summers diverted approximately $167,000. On March 17, 1992, he diverted over $209,000. Parma testified that he knew the Environmental Protection Agency (EPA) was investigating Summers as of October 15, 1991, but did not believe the allegations and did not inform WellTech or Abadie of the investigation.

Vanguard allegedly made misrepresentations to WellTech regarding the TDS–10 machine's capacity and Vanguard's financial statements, overstating Vanguard's assets in the amount of $250,000. Furthermore, Parma testified that the Vanguard officers could have known about the misrepresentations made to WellTech.

WellTech discovered these misrepresentations after the February 5, 1992, closing. WellTech filed suit on December 3, 1992,

---

* The honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

1. Abadie, Parma and Summers were all defendants in the court below and are all appellants in this Court. However, because Abadie filed a separate brief with distinct points of error, appellants will be referred to separately as "Abadie" and "Parma and Summers."

seeking rescission of the security sale. After a bench trial, the trial court rendered judgment for WellTech, and Vanguard was ordered to pay WellTech the amount it paid in consideration for the stock plus interest and attorneys' fees. Before rendition of judgment, WellTech executed a document entitled "Tender of Securities," indicating a return of the stock to Vanguard.

Vanguard control persons appeal this judgment.

## Vanguard's Liability

█ Parma and Summers argue in their first point of error that the trial court erred by finding them secondarily and jointly and severally liable for WellTech's claims without pleadings, allegations, or judgment finding that the corporate defendant, Vanguard, had violated the Securities Act. The record reflects the trial court actually held appellants "jointly and severally liable," not "secondarily" liable.

The Securities Act provides:

A person who directly or indirectly controls a seller, buyer or issuer of a security is liable under Section 33A, 33B, or 33C jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer, unless the controlling person sustains the burden of proof that he did not know and in the exercise of reasonable care could not have known, of the existence of facts by reason of which liability is alleged to exist.

TEX.REV.CIV. STAT. ANN. art. 581–33(F) (Vernon Supp.1996).

Parma and Summers propose that this statute precludes a control person's liability in the absence of pleadings alleging the controlled entity's liability. While Vanguard was alleged as a nominal defendant, no relief was sought against Vanguard, which was in bankruptcy. No Texas case has addressed this issue. However, in *Keys v. Wolfe*, 540 F.Supp. 1054 (N.D.Tex.1982), *rev'd on other grounds*, 709 F.2d 413 (5th Cir.1983), the court addressed this issue and held it was unnecessary to join the seller as a party as long the evidence showed the defendant's

control over the seller and a violation of the Securities Act by the seller. *Id.* at 1061–62.

Parma and Summers' brief quotes from the commentary accompanying article 581–33(F) in which the rationale for control person liability is stated: "a control person is in a position to prevent the violation and may be able to compensate the injured investor when the primary violator (e.g. a corporate issuer which has gone bankrupt) is not." This is exactly the situation here. Article 581–33(F) provides for joint and several liability, and does not require a plaintiff to seek affirmative relief against the controlled entity before such relief may be sought from a control person. We decline to impose such an additional requirement. We overrule Parma and Summers' first point of error.

## Money Damages

Parma and Summers' second point of error alleges the trial court erred by rendering a judgment for money damages after WellTech abandoned the pleadings requesting such relief. Alternatively, Parma and Summers' third point of error alleges the trial court erred by rendering a judgment for rescission in the absence of pleadings requesting such relief. Abadie's second point of error claims the trial court erroneously rendered both a money judgment and rescission when only one remedy is available to WellTech. Parma and Summers' sixth point of error claims that WellTech sold the stock in question before rendition of judgment, making rescission an inappropriate remedy. We address these arguments together because they all challenge the appropriateness of rescissionary relief.

The judgment was "for the plaintiff on its claims" and ordered that WellTech recover from Parma and Summers the amount of consideration paid for the securities, plus interest, attorney's fees, and court costs.

█ Money damages are available for a buyer only when the buyer no longer owns the securities in question, whereas rescission is available to the buyer when the buyer still owns the stock. *Randall v. Loftsgaarden,* 478 U.S. 647, 655–56, 106 S.Ct. 3143, 3148–49, 92 L.Ed.2d 525 (1986); *Anheuser–Busch Cos. v. Summit Coffee Co.,* 858 S.W.2d 928, 939

(Tex.App.—Dallas 1993, writ denied). The record does not indicate a sale of the stock by WellTech. Parma and Summers cite a draft of sale, which is unsigned. However, we cannot conclude from unsigned documents that the sale was executed. Therefore, we overrule Parma and Summers' sixth point of error.

In fact, the record includes a tender of securities in which WellTech returned to Vanguard the stock it purchased through the February 5, 1992, sale agreement. That document supports the contention WellTech still owned the stock at the time of trial and that rescission was the appropriate remedy. Therefore, we overrule Abadie's second point of error.

■ WellTech's third amended petition[2] alleges the control persons violated the Securities Act, and this violation "entitles Well-Tech to rescind the closing and recover as damages from the control persons the value of the securities at the time of the closing." The pleadings clearly request rescissionary relief. This portion of the pleadings is included under the "Violations of the Texas Securities Act" cause of action. The judgment ordering rescission is consistent with WellTech's pleadings. Therefore, we overrule Parma and Summers' second and third points of error.

### Partial Rescission

In their fourth and fifth points of error, Parma and Summers claim the trial court erred by ordering partial rescission of an indivisible contract. The agreements between Vanguard and WellTech included several loans to Vanguard from WellTech, totalling over one million dollars. The trial court's judgment does not address the loans. Parma and Summers argue that a stock sale transaction is indivisible and the court should have rescinded the entire transaction or none of it. In support of their argument, Parma and Summers cite cases that discuss the indivisibility of property settlement agreements.[3]

· ■ A contract is indivisible when by its terms, nature, and purpose it contemplates and intends that each and all parts and the consideration shall be common to each other and interdependent. *Wellington R.R. Comm. v. Crawford,* 216 S.W. 151, 155 (Tex. Comm'n App.1919, judgm't adopted). Vanguard and WellTech executed several agreements at the same time. However, each agreement constituted a separate transaction. There was a sale of stock, a term loan, an equipment loan, and others. The contract between the parties plainly treats these agreements as independent. All agreements were supported by independent consideration and all were executed with distinct and identifiable purposes independent of each other. Therefore, the trial court correctly rescinded only the agreement to sell securities; the balance of the agreements can remain intact because they are separate and distinct agreements.

Accordingly, we overrule Parma and Summers' fourth and fifth points of error.

### Equitable Rescission

Parma and Summers' seventh point of error alleges the trial court erred in ignoring the rules applicable to equitable rescission when it ordered rescission under the Securities Act. Parma and Summers claim the rescission was improper because they were not restored to the position they were in prior to the sale.

■ The federal statute provides that the buyer of securities "may sue either at law or in equity ... to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." 15 U.S.C. § 77*l* (West 1988). The Texas statute similarly states the buyer "may sue either at law or in equity for rescission, or for damages if the buyer no longer owns the security." Tex.Rev.Civ. Stat. Ann. art. 581–33(A)(2) (Vernon Supp.1996). The simi-

---

**2.** WellTech's third amended petition was its live pleading at trial.

**3.** *Neill v. Neill,* 386 S.W.2d 642 (Tex.Civ.App.— Austin 1965, writ dism'd w.o.j.); *Ashby v. Gibbon,* 69 S.W.2d 445 (Tex.Civ.App.—Amarillo 1934, no writ).

lar wording in the federal and state statutes allows us to look to federal cases as a guide to interpreting this statute. *Anheuser–Busch,* 858 S.W.2d at 939.

■ Federal securities law generally interprets rescission as an exchange to return the parties to a status quo. *Anheuser–Busch,* 858 S.W.2d at 939. However, restoration to the status quo is not a "binding prerequisite to the remedy of rescission." *Id.* In fact, the main concern of courts should be to restore the *plaintiff* to the status quo, not necessarily the defendant. *Randall,* 478 U.S. at 659, 106 S.Ct. at 3150–51. Therefore, the trial court did not err when it decided rescission was the correct remedy to restore WellTech to the status quo.

We overrule Parma and Summers' seventh point of error.

### Purchaser Status

In his first point of error, Abadie alleges WellTech was not the buyer of the stock and does not have standing to sue the control persons. Abadie bases his claim on WellTech's use of funds from investors to purchase the majority of the stock.

■ The Fifth Circuit Court of Appeals held that an individual was considered the "buyer" even though he purchased the stock with his relatives' money. *Lewis v. Walston & Co.,* 487 F.2d 617, 622 (5th Cir.1973). In *Lewis,* an individual bought stock and intended to distribute the stock to each relative according to the amount paid. *Id.* The court held that the individual was recognized as the "purchaser" because the stock was in his name and a letter of investment intent showed he was the sole purchaser. *Id.*

Likewise, a federal district court held that a plaintiff did not have to be an owner to be considered the purchaser, but had to have "sufficient indicia of ownership to effectuate a tender of the securities." *Monetary Management Group v. Kidder, Peabody & Co.,* 604 F.Supp. 764, 768 (E.D.Mo.1985). The plaintiff in *Monetary Management* purchased the bonds in question for a customer, and the court found this sufficient to establish the plaintiff as the purchaser and as the proper party to bring an action for rescission. *Id.* at 767.

WellTech negotiated with the control persons for the purchase of Vanguard stock and was the record holder of the stock. Regardless of who actually funded the sale, WellTech had sufficient indicia of ownership to tender the securities, which it apparently did.

We overrule Abadie's first point of error.

### Motion for New Trial

■ Abadie's third point of error asserts the trial court erred in not granting his motion for new trial based on newly discovered evidence. The granting or overruling of a motion for new trial is within the discretion of the trial court, and the standard of review is abuse of discretion. *Cliff v. Huggins,* 724 S.W.2d 778, 778–79 (Tex.1987). The movant must prove that: (1) the evidence has come to the party's knowledge since the trial; (2) the lack of discovery before this point is not due to want of due diligence of the party; (3) the newly discovered evidence is not cumulative; and (4) the evidence is so material that it would probably cause a different result. *Jackson v. Van Winkle,* 660 S.W.2d 807, 809 (Tex.1983).

Abadie presented newly discovered evidence in the form of three affidavits. The first affidavit was submitted to challenge a finding of fact made by the court. An examination of the record supplied to this Court reveals no signed and entered findings of fact and conclusions of law. The absence of findings render an affidavit attacking them immaterial.

■ Abadie claims the second affidavit would negate hearsay testimony. The newly discovered evidence, an affidavit from Maury Soukup, was discovered through investigation after trial. Abadie claims in his brief he "tried in vain" to find Soukup before the trial. This Court stated in *Pan American Life v. Erbauer Construction* that the party moving for a new trial did not exercise due diligence when it did not take any action to delay the start of the trial to pursue further discovery. 791 S.W.2d 146, 151 (Tex.App.— Houston [1st Dist.] 1990), *rev'd on other*

*grounds,* 805 S.W.2d 395 (Tex.1991). Abadie likewise failed to exercise due diligence.

Abadie also offers the newly discovered affidavit of Craig Longhurst. The affidavit tends to establish that Longhurst did not tell Abadie that Summers was under investigation by the EPA. This is simply cumulative and not sufficient to require the grant of a new trial. *Jackson,* 660 S.W.2d at 809. Furthermore, if introduced as evidence in a new trial, this information would not establish that Abadie could not have known about the investigation, just that Longhurst did not tell him about it. Therefore, the information is not material and would not be likely to cause a different result. *Id.*

We overrule Abadie's third point of error.

## Findings of Fact and Conclusions of Law

Abadie's fourth and seventh points of error concern allegedly incorrect findings by the trial court. As discussed earlier, the document entitled findings of fact and conclusions of law that Abadie refers to in the record is simply an unsigned draft of proposed findings of fact and conclusions of law. If the trial court did enter findings, then Abadie has failed to supply this Court with a sufficient record to review them. TEX.R.APP. P. 50(d).

We overrule Abadie's fourth and seventh points of error.

## WellTech's Burden

Abadie's fifth point of error alleges WellTech failed to state it would not have bought the Vanguard stock had it known of the alleged adverse material facts.

The Securities Act provides:

A. Liability of Sellers.

(2) Untruth or Omission. A person who offers or sells a security (whether or not the security or transaction is exempt under Section 5 or 6 of this Act) by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, is liable to the person buying the security from him, who may sue either at law or in equity for rescission, or for damages if the buyer no longer owns the security. However, a person is not liable if he sustains the burden of proof that either (a) the buyer knew of the untruth or omission or (b) he (the offeror or seller) did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

TEX.REV.CIV. STAT. ANN. art. 581–33 (Vernon Supp.1996).

The statute does not include a requirement that the plaintiff show he would not have purchased the stock if he had known of the alleged adverse material facts. Absent some authority requiring such proof, Abadie fails to sustain this point.

We overrule Abadie's fifth point of error.

## WellTech's Knowledge

Abadie's sixth point of error states that WellTech bought Vanguard's stock knowing of the problems WellTech now deems material. Abadie's argument is based on the expertise of WellTech and WellTech's duty to exercise due diligence to discover the true situation of the company.

WellTech had no duty of due diligence; the statute merely requires proof of a misrepresentation by the seller. TEX.REV.CIV. STAT. ANN. art. 581–33(A)(2) (Vernon Supp.1996). It is not a defense to fraud that the defrauded person might have discovered the truth by the exercise of ordinary care. *Colvin v. Allsworth,* 627 S.W.2d 430, 431–32 (Tex.App.— Houston [1st Dist.] 1981, no writ).

Furthermore, Abadie argues WellTech knew of the management problems in Vanguard. This is not disputed. However, WellTech's complaints of misrepresentation concerned the embezzlement, EPA investigation, Summers' integrity, and the capacity of the TDS–10, not the general disorganization of the company.

We overrule Abadie's sixth point of error.

## Conclusion

We affirm the trial court's judgment.

OLIVER–PARROT, former C.J., sat on the original submission of this case, but did not participate on rehearing.