No. 04-00-00101-CV



CRESCENDO INVESTMENTS, INC.; Charles E. Engelman, Individually

 And As Trustee For The Engelman Family Trust; Encotec International Inc.; Thomas R. Russell;

Roger Bean; Christopher B. Ticknor, M.D.; Buford Clemmer; K. Dale Kartchner, M.D., 

Profit Sharing Plan & Trust; Michael H. Schlatter; Thomas Weiss, M.D.; Robert C. Adair;

 Bonna L. Loy, As Trustee For The James R. Loy And Bonna L. Loy Revocable Living
 Trust;
 Richard W. Miller; MMW Industries, Inc.; Robert H. Thomas; Martha W. Thomas; 

 Raymond B. Ince; Loyce J. Ince; Gibson Plumbing, Inc.; Dale Eppler; Pat Eppler; 

T.C. Group, Inc.; Autocommunicaciones, S.A. De C.V.; William Lawler; Carol Lawler; 

Steve L. Holifield, Jr.; Steve L. Holifield, Sr.; NTT Investments, Ltd. And Gerry O. Williamson, 

Executrix Of The Estate Of Joe Williamson,

Appellants



v.



Bill BRICE, Jr. and Julie Brice,


Appellees



From the 288th Judicial District Court, Bexar County, Texas


Trial Court No. 96-CI-03315


Honorable Frank Montalvo, Judge Presiding



Opinion by: Tom Rickhoff, Justice


Sitting: Tom Rickhoff, Justice

 Paul W. Green, Justice

 Sarah B. Duncan, Justice (concurring in the judgment only)


Delivered and Filed: May 30, 2001


AFFIRMED

 In eleven appellate issues, Crescendo Investments, Inc. and the other named plaintiffs
(hereinafter "Crescendo" collectively) challenge the sufficiency of the evidence, and complain the trial
court erred in granting a directed verdict, resolving conflicting jury answers, five evidentiary rulings,
failing to give an instruction regarding spoliation of evidence, refusing to allow the substitution of
certain parties, and granting an award of costs. Finally, Crescendo raises a cumulative error issue.
We affirm.

Factual and Procedural History

 The plaintiffs were the victims of an investment scheme directed by Hugh Scott. Appellees
Bill and Julie Brice are the only remaining defendants. The Brices owned Brice Foods, Inc., (BFI)
which was the general partner in a limited partnership which owned the franchise (and some actual
shops) of "I Can't Believe It's Yogurt!"(ICBIY). (1) Scott operated various Cayman Islands
corporations which obtained master franchises from BFI/ICBIY to develop large international areas. (2)

 The master franchise agreements with Scott were negotiated and signed on behalf of BFI by
James Amos, President of International Development (1991-1996) and Chief Operating Officer
(1994-1996) of BFI/ICBIY. Peter Holt, Director of International Development, was also involved
in international franchising. Scott obtained the master franchises for his corporations and limited
partnerships and created other companies to conduct fund raising.

 Sale of securities through Scott's companies and co-operators began in April 1992. The sales
were made through cold-calling operations followed up by mailed packages. Of these sellers,
Crescendo called only Michael Horner as a witness. (3) The securities sold included stock in the
Cayman Island Corporations and other revenue interests. Most investments consisted of an interest
in the profits or gross revenues of proposed yogurt shops to be developed by Scott. Investor
packages explained these joint ventures with Scott's business entities. Included in the packages were
letters from BFI confirming that Scott's companies were master franchisees. These solicitations of
shares were for "accredited investors" in the United States, who apparently may purchase this type
of foreign investment only if they have a net worth of over $1,000,000 or annual income over
$200,000.

 Two plaintiffs received BFI's domestic franchise brochure. They had expressed independent
interest in becoming franchisees. Crescendo relies heavily on this brochure to implicate the Brices
and BFI. The brochure explained what BFI was looking for in franchisees, namely experience and
financial means. Crescendo argues throughout that because Scott was not so experienced and was
not in great financial shape, these brochures were misrepresentations about Scott.

 Scott could be viewed as running a partially legitimate yogurt business, with several shops and
significant purchases of yogurt from BFI. By late 1994, however, he was having financial difficulties
which caused him to default on obligations owed to BFI. In September of 1995, default in
obligations to BFI caused termination of the master franchise agreements.

 Crescendo went to trial on claims of securities fraud and civil conspiracy. Scott and the
Brices were the only defendants to go to trial. The jury found, inter alia, that Scott, Amos, and Holt
were involved in a conspiracy. Amos and Holt had settled before trial, and, after the verdict, Scott
settled by way of a non-dischargeable agreed judgment in his bankruptcy case for $1,500,000. The
Brices were wholly successful below. Crescendo's claims against the Brices may be summarized into
three general areas: (1) the Brices were aiders and abettors of the fraudulent sale of securities; (2) the
Brices were participants in the civil conspiracy; and (3) the Brices were liable as control persons of
BFI/ICBIY, under the Texas Securities Act.

Discussion

1. Directed Verdict 

 Crescendo's first and second issues assert the trial court erred in granting a directed verdict.
The court granted the Brices' motion for directed verdict on the claim of aider and abettor liability
under the Texas Securities Act and Julie's motion on the conspiracy claim. On appeal of a directed
verdict, we review all the evidence in the light most favorable to the non-movant, disregarding all
contrary evidence and inferences. See Szczepanik v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex.
1994) (per curiam). A directed verdict is appropriate "if no evidence of probative force raises a fact
issue on the material questions in the suit." Prudential Ins. Co. of Am. v. Financial Review Servs.,
Inc. 29 S.W.3d 74, 77 (Tex. 2000). A court may direct a verdict when a plaintiff fails to present
evidence raising a fact issue essential to the plaintiff's right of recovery. See id. We must affirm a
directed verdict if the record discloses a ground that establishes, as a matter of law, that the movant
was entitled to judgment, even though the ground was not embodied in the motion for directed
verdict. Gonzales v. Willis, 995 S.W.2d 729, 740 (Tex. App.-San Antonio 1999, no pet.).

 Crescendo must show a fact question as to whether the Brices themselves acted as aiders or
abettors. Under the Texas Securities Act, to establish liability of an aider and abettor, a plaintiff must
show the following: (1) a primary violation of securities laws occurred; (2) the aider had general
awareness of its role in this violation; (3) the aider rendered substantial assistance in this violation;
and (4) the aider either intended to deceive plaintiff or acted with reckless disregard for the truth of
the representations made by the primary violator. Frank v. Bear, Stearns & Co.,11 S.W.3d 380, 384
(Tex. App.-Houston [14th Dist.] 2000, pet. denied); see Tex. Rev. Civ. Stat. art. 581-33F(2)
(Vernon Supp. 2001).

 The primary violations were committed by Scott, his companies, and his co-conspirators by
absconding with investor funds instead of fully developing the proposed stores. Crescendo admits
the Brices' testimony tends to show they were uninformed about the international franchise
agreements and relied on Amos to manage international franchising. Crescendo claims the Brices
were aiders and abettors because they were educated, experienced franchise executives who owned,
managed, and controlled their business, and received substantial compensation. There was also
testimony that the Brices were involved in the day-to-day operations of the company and knew of
Scott's master franchise holdings, development delays, and late payment of franchise obligations.
There was also testimony that Amos regularly reported to the Brices. (4) Crescendo makes much of the
fact that Julie knew Scott was raising money from investors as early as November of 1992. Finally,
there was an allegation from one of Scott's money raisers (Larry Talley) that one million dollars was
unaccounted for and misappropriated in February of 1994.

 The Brices argue they did not provide substantial assistance to the violation, did not act with
"general awareness," or with the requisite intent. We agree. While the Brices' corporation granted
franchises and their corporate officers (Amos and Holt, whom the jury found conspired with Scott)
were acting as references for Scott, the Brices were not used as references. Substantial assistance
was also rendered by Amos granting the ICBIY franchise. There is no evidence the Brices acted with
general awareness of their role or with the necessary intent regarding the representations made by
Scott's companies. All the evidence suggests the Brices were assisting a franchisee in the yogurt
business. Crescendo claims the Brices aided by allowing Scott to use their reputation and celebrity
status by allowing BFI/ICBIY brochures to be used. There was no deception or misrepresentation
in their own reputation and celebrity status and in BFI's promotional materials. The Brices' actions
do not show intent to deceive or reckless disregard for the truth of the representations that could
conceivably be attributed to them. Finally, even if they knew Scott was absconding invested funds, (5)
the Brices did not substantially assist the violation i.e., the fraud. The Brices did not assist Scott in
selling fraudulent securities or diverting money. To be an aider and abettor, there must be evidence
of general awareness and substantial assistance of the violation with the necessary intent. Because
the Brices were not assisting the violation, we overrule Crescendo's first issue.

 Crescendo's second issue asserts the court erred in granting a directed verdict on the
conspiracy claim against Julie. A civil conspiracy under Texas Law "is a combination by two or more
persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."
Firestone Steel Prods. v. Barajas, 927 S.W.2d 608, 614 (Tex. 1996). There are five essential
elements of a conspiracy: (1) two or more persons; (2) an objective to be accomplished; (3) a meeting
of the minds on the objective or course of action; (4) one or more unlawful, overt acts; and (5)
damages as a proximate result. Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983). The
meeting of the minds requirement requires knowledge of the course of action and specific intent. See
Triplex Communications, Inc. v. Riley, 900 S.W.2d 716, 719 (Tex. 1995).

 The jury found that Scott, Amos, Holt, and Horner engaged in a conspiracy to defraud
investors commencing in May of 1992. Crescendo asserts there is evidence that Julie joined the
conspiracy at some later time. Crescendo argues Julie's participation in the conspiracy is evidenced
by the Brices' substantial salaries and shareholder withdrawals between 1991 and 1995. (6) Crescendo
also points to the Brices' knowledge of financial problems in the UK operations, (7) that Scott was
raising money, and that ICBIY brochures were included in the promotional materials. In March of
1994, because of concerns about the promotional materials, Amos wrote a letter to Scott requesting
a change in the materials to eliminate any chance BFI would be liable for the actions of Scott and his
corporations. (8) It was not until June of 1995 that BFI insisted on the changes. Crescendo argues that
Julie was a part of the conspiracy because she, as president of the company, did not cause the changes
in the materials sooner. Finally, in late 1994, the Brices learned that one of Scott's money-raisers
(Talley) accused Scott of diverting one million dollars.

 This evidence does not raise a fact question as to Julie's involvement in the conspiracy. The
conspiracy's unlawfulness was not merely "fund-raising," despite Crescendo's framing of the issue
as such. The real issue was the fraudulent nature of the fund-raising because of the conspirators'
deception and conversion of investor funds. Julie's knowledge of fund-raising and the use of ICBIY
brochures by a franchisee do not tend to prove her involvement in an illegal conspiracy.
Furthermore, cash flow problems would be a good reason to expect a master franchisee to attempt
to raise money through investment. As to the disclaimers on the brochures, Amos informed the
Brices that he met with Scott and took care of the problem as soon as the issue arose.

 Finally, there is Julie's awareness of the accusation that Scott was misappropriating investor
funds. Amos testified Talley made the complaint in late 1994. However, it was Amos's impression
that Talley and Scott were involved in a power struggle over control of their business. With that
seemingly legitimate reason to ignore or discount the accusation, Julie's actions after the complaint
appear proper. She would be completely justified in relying on her executive, Amos, and his
assessment. His job was to manage the international division. The evidence does not create an
inference of Julie's intent to be involved in an illegal conspiracy because it is an equally plausible
inference that she was not involved. We overrule Crescendo's second issue.

 2. Sufficiency of the Evidence

 In two issues, Crescendo contends the evidence was legally and factually insufficient to
support the jury's verdict. In attacking the legal sufficiency of an adverse finding to an issue on which
it had the burden of proof, Crescendo must demonstrate that the evidence establishes all necessary
facts as a matter of law. See Victoria Bank & Trust Co. v. Brady, 811 S.W.2d 931, 940 (Tex. 1991);
Cruz v. Hinojosa, 12 S.W.3d 545, 551 (Tex. App.-San Antonio 1999, pet. denied). We must first
examine the record for evidence that supports the jury's finding, ignoring all evidence to the contrary.
See Cruz, 12 S.W.2d at 551-52. Second, if no evidence supports the jury's finding, we examine the
entire record to determine whether the contrary proposition (Crescendo's proposition) is established
as a matter of law. Id. 

 In a factual sufficiency challenge, the party who had the burden of proof must demonstrate
that the adverse finding is against the great weight and preponderance of the evidence. Id. In
reviewing factual sufficiency, we consider all the evidence to determine whether the findings are so
against the great weight and preponderance of the evidence as to be manifestly unjust. Id.; see Cain
v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 In its sixth issue, Crescendo argues there is no legally and factually sufficient evidence to
support the jury's finding in question two that BFI/ICBIY (9) did not violate the Texas Securities Act.
A seller of securities may be liable if it offers or sells a security by means of an untrue statement of
a material fact or an omission of a material fact necessary to prevent statements made from being
misleading. See Tex. Rev. Civ. Stat. Ann. art. 581-33A(2) (Vernon Supp. 2001). Crescendo must
introduce evidence of misleading statements by BFI/ICBIY that relate to the security purchased and
induced the purchase thereof. See Nicholas v. Crocker, 687 S.W.2d 365, 368 (Tex. App.-Tyler
1984, writ ref'd n.r.e.); cf. Pitman v. Lightfoot, 937 S.W.2d 496, 531(Tex. App.-San Antonio 1996,
writ denied) (construing article 581-33B (liability of buyers) of the Texas Securities Act in light of
Nicholas). A statement made after purchase of the securities could not induce purchase and is
therefore not relevant. See Nicholas, 687 S.W.2d at 368.

 The liability of a corporation for torts committed by its agents is governed by the same rules
as those that determine the liability of any other principal. See Wal-Mart Stores, Inc. v. Odem, 929
S.W.2d 513, 530 (Tex. App.-San Antonio 1996, writ denied). Any recovery against a corporation
for tort must be based on the wrongful act of an officer or agent, within the course or scope of his
employment. Id.

 BFI/ICBIY's alleged statements were made by Holt, Amos and one of Amos's assistants,
Debbie Ryan. They relate to Scott's ability, reputation, good standing with BFI/ICBIY, the
opportunity for profit, and his meeting the master franchisee requirements. Despite these statements
by executives of BFI, the jury found BFI did not violate the Texas Securities Act. Considering the
evidence, the jury may have found that the conspirators Holt and Amos made these statements, but
that they were not imputed to BFI. (10) Furthermore, the statements are not false as they relate to the
legitimate yogurt business or are vague references to Scott's abilities or something similar.

 In question one, the jury found BFI/ICBIY was a seller of securities. The resolution of this
issue turns on whether BFI/ICBIY made necessary misrepresentations of material facts or was
vicariously liable for the acts of its officers and employees. Crescendo argues the actions of Holt and
Amos are imputed to BFI/ICBIY, as well as the actions of the Lions Paw companies which were
marketing the securities. Assuming there is a fact question as to whether there are misleading
statements of material fact imputed to BFI which induced each purchase, Crescendo has not proven
its contention as a matter of law or that the finding is against the great weight of the evidence. We
overrule Crescendo's sixth issue.

 Crescendo's seventh point of error asserts there is no legally or factually sufficient evidence
to support the jury's finding that Bill was not part of the conspiracy that damaged the plaintiffs.
Crescendo admits that this is not a case of piercing the corporate veil, then attempts to pierce the
same. Its principal argument is that the economic reality of the situation is that Bill reaped the real
rewards of the conspiracy and that he "did nothing while allowing his directors [conspirators Amos
and Holt] to run his company." The evidence and the jury's findings demonstrate that Amos and Holt
were conspirators. There is abundant evidence supporting the verdict. It is not our duty to re-weigh
evidence or assess credibility. Allowing his officers to run the company and failing to adopt more
prudent company policies does not prove Bill participated in the conspiracy. Crescendo argues that
Bill's shortcomings as a supervisor prove he was involved in the conspiracy. The only evidence
against Bill is the acts of his corporation or its officers. Bill's own testimony provides legally
sufficient evidence to support the verdict. Crescendo has not proven as a matter of law that Bill was
a part of the conspiracy or that the jury's finding is contrary to the great weight of the evidence. We
overrule Crescendo's seventh issue.

3. Conflicting Jury Answers

 Crescendo's third issue claims the answers to two jury questions are conflicting. In reviewing
the jury findings for conflict, the threshold question is whether the findings concern the same material
fact. Bender v. Southern Pac. Transp. Co., 600 S.W.2d 257, 260 (Tex. 1980). If there is any
reasonable basis upon which jury answers can be reconciled, a court may not strike them as
conflicting. Id. We must reconcile apparent conflicts in the jury's findings if reasonably possible
considering the state of the pleadings, evidence, manner of submission, and the other findings. Id. 

 The jury found in question twelve that Scott, Horner, Amos, and Holt were part of a
conspiracy that damaged the plaintiffs. In question one, the jury found that BFI/ICBIY sold or
offered to sell securities to the plaintiffs. In question two, however, the jury found that BFI/ICBIY
did not violate the Texas Securities Act. Crescendo argues BFI/ICBIY must be liable (and therefore
the Brices as control persons) because, "no . . . evidence was ever raised to rebut the presumption
that Amos and Holt were acting in a capacity other than as directors and agents of BFI/ICBIY."
Crescendo seems to argue that we must presume Holt and Amos, officers of BFI, were acting as
agents of the corporation. There is no such presumption. Crescendo had the burden to plead, prove,
and obtain a verdict on an agency theory.

 The conflict is easily reconciled. The jury could have found BFI was a seller because its
brochures and other information was sent out with Scott's solicitations. These brochures contained
legitimate information about the yogurt business. There were also newspaper articles chronicling the
Brices' business success and a letter indicating that Hawk Wing, Ltd. was a master franchise partner.
The information pertains to legitimate franchise operations, and Crescendo has not shown the
information to be misleading. This legitimate information is the basis for finding BFI sold or offered
to sell securities. The materials attributable to BFI are not as a matter of law material
misrepresentations which induced purchase of the securities.

 The jury could have found BFI did not violate the Texas Securities Act even though BFI was
a seller under the statute and Holt and Amos were a part of the conspiracy. As for the officers of BFI,
the jury could have reasonably found Amos and Holt were engaged in the conspiracy, but liability for
material misrepresentations was not imputed to BFI. Crescendo has not proven as a matter of law
that Amos and Holt were acting as agents when they engaged in the conspiracy. Therefore, the
findings are reconcilable. Because the allegedly conflicting findings may be reconciled and do not
necessarily concern the same material fact, we overrule Crescendo's third issue. 

4. Trial Court's Failure to Disregard Question Two and Enter Judgment

 In its fourth issue, Crescendo claims the trial court erred in failing to disregard the jury's
answer to question two, in which the jury found BFI/ICBIY did not violate the Texas Securities Act
because the finding was immaterial. A trial court may disregard a jury finding if the issue is
immaterial. See Spencer v. Eagle Star Ins. Co. of Am., 876 S.W.2d 154, 157 (Tex. 1994). A
question is immaterial when it should not have been submitted, or when it has been rendered
immaterial by other findings. Id.

 Crescendo claims that because a director and executive of BFI (11) (Holt and Amos) were liable
in a securities fraud conspiracy, the Texas Securities Act makes BFI liable as a matter of law. A
person who controls a seller ("control person") is jointly and severally liable with the seller to the
same extent the seller is liable. See Tex. Rev. Civ. Stat. art. 581-33F(1) (Vernon Supp. 2001).
Crescendo claims that because a control person was held liable, the corporation is therefore liable,
citing Summers v. Welltech, Inc., 935 S.W.2d 228 (Tex. App.-Houston [1st Dist.] 1996, no writ).
Summers and the statute, however, do not support Crescendo's claim. Summers and the statute state
that a control person is liable only if, and to the extent that, the seller is liable. See Summers, 935
S.W.2d at 231. The seller in this case, BFI, was not held liable. There is no liability to impute.
Crescendo's theory that liability of a control person is imputed to the controlled seller is analogous
to arguing that if a principal is liable, then an agent is vicariously liable. The argument has no merit.
 We overrule Crescendo's fourth issue.

5. Exclusion of Evidence

 In its fifth issue, Crescendo challenges five evidentiary rulings. We review the exclusion of
evidence under an abuse of discretion standard. McEwen v. Wal-Mart Stores, Inc., 975 S.W.2d 25,
27 (Tex. App.-San Antonio 1998, pet. denied). An abuse of discretion occurs when the court acts
without reference to any guiding rules and principles. Id. If we find the trial court erred and
Crescendo preserved the error, Crescendo has the burden to show the error probably caused the
rendition of an improper judgment. See Tex. R. App. P. 44.1(a)(1). To show harm, the excluded
evidence must be controlling on a material issue and not cumulative of other evidence. See Williams
Distrib. Co. v. Franklin, 898 S.W.2d 816, 817 (Tex. 1995) (per curiam).

 Crescendo argues the excluded evidence proves the existence of the civil conspiracy.
Crescendo complains of the following exclusions by the trial court: 


 (1) Salary and Bonus paid to Amos, Holt, and the Brices by BFI. Crescendo claims
this evidence shows a motive to assist Scott and shows the Brices must have been
very involved in running BFI.

 (2) Hawk Wing, Ltd.'s bankruptcy and Holt & Horner's discussion about the
bankruptcy and bounced checks between April and June of 1995. Crescendo claims
this shows the nature of the prior conspiracy.

 (3) Scott, Amos, and Holt's solicitation of investors for the Middle East franchise.

 (4) Assurances to investors from Amos and Holt.

 (5) Bill's request in 1992 to review investor packages. Crescendo asserts this proves
when Bill knew Scott was raising money.

 The only defendants still before the court in this case are the Brices. To show error,
Crescendo must show there was an abuse of discretion in excluding the evidence and harm as to the
claims against the Brices. The second, third, and fourth proffers listed above have nothing to do with
the Brices. That evidence is cumulative of other evidence concerning the conspiracy which was
proven, and any error in excluding it was harmless.

 Crescendo's first evidentiary claim asserts the trial court erred in excluding the Brices'
compensation. (12) Scott's financial contribution to the whole of BFI was limited compared to total
revenue. Compensation comes from many sources, and it could be confusing to offer this evidence
considering the many revenue sources of BFI/ICBIY. We do not believe the trial court abused its
discretion in refusing to admit this evidence. Furthermore, any error would be harmless for a similar
reason. The amount of compensation does not prove participation in illegal or inappropriate activities
considering the other revenue sources and the whole record.

 Crescendo's fifth item was a proffer of Scott's testimony to the effect that Amos told Scott
that Bill wanted an investor packet. The court ruled the testimony consisted of unreliable hearsay.
Regardless of admissibility, the evidence is cumulative and not controlling on a material issue. No
one disputes that Bill knew Scott was raising money. The relevant issues are when the Brices knew
Scott was committing fraud and misappropriating the money and whether the Brices were co-conspirators or aiders and abettors. Knowledge of money-raising alone does not prove the Brices'
liability. Because the excluded evidence was cumulative and the error, if any, in excluding it was
harmless, we overrule Crescendo's fifth issue.



6. Spoliation of Evidence

 Crescendo's eighth issue raises spoliation of evidence. The intentional destruction, or
spoliation, of evidence relevant to a case may give rise to a presumption that the destroyed evidence
would have been unfavorable to its destroyer. Aguirre v. South Tex. Blood & Tissue Ctr., 2 S.W.3d
454, 457 (Tex. App.-San Antonio 1999, pet. denied). This presumption may be rebutted by showing
that the evidence in question was not destroyed with fraudulent intent or purpose. Id. We review
a ruling on a spoliation instruction under an abuse of discretion standard. See id.

 Crescendo complains of spoliation because Bill was found deleting information from his
company's network the night before the company's sale to Yogen Früz was completed. That same
day, thirteen of the appellants filed suit. There are two parts of the spoliation claim: (1) certain
unavailable e-mails; and (2) "other" missing documents. Amos and Bill testified that Amos sent
weekly or bi-weekly e-mail reports concerning significant events in the company, including the
international division. Despite reasonable search efforts, BFI was unable to locate the e-mails.
Secondly, Crescendo claims that other documents were known to exist, but not produced, concerning
the Middle East Franchise, Scott's financial unsoundness, and Holt's failure to require disclaimers.
Crescendo admits, "some of the missing documents were obtained . . . many were not."

 The Brices argue the spoliation issue was waived. The trial court ruled on the issue in a
pretrial hearing. The Brices claim Crescendo never brought forth any evidence on the issue or made
an offer of proof at trial. The Brices also argue that because the motion was presented before trial,
it only sought an advisory ruling concerning the jury charge. Crescendo did, however, request a
spoliation instruction in the charge, but it refers only to the e-mails Amos sent to the Brices. We hold
the vague "missing documents" issue was waived in the trial court because no instruction was
requested at trial.

 Amos described the e-mails to Bill as "brief summaries of - of what was going on,
highlighting what was taking place." Bill's affidavit explained that he was deleting files concerning
personal business and separate businesses not being sold to Yogen Früz. Brice also stated he
normally erased e-mails after reading them. The affidavit provided the trial court adequate evidence
to find the e-mails were not destroyed with fraudulent intent or purpose. (13) Crescendo has failed to
show an abuse of discretion. We overrule Crescendo's eighth issue.

7. Substitution of Parties

 Crescendo's ninth issue argues the trial court erred in refusing to allow substitution of
"nominal plaintiffs" for certain trusts. Three trusts were originally named as plaintiffs. After
limitations had run, the Brices amended their pleadings and argued a trust is not a legal entity which
may sue. Crescendo moved to substitute the trustees for the trusts, so the claims of the nominal
plaintiffs would relate back to the original filing. The Brices objected to substitution, but they did not
oppose joinder of the trustees because they believed limitations would have barred the trustee's
claims. Nevertheless, the trusts' claims were submitted to the jury.

 The issue is moot and any error is harmless because we are otherwise affirming the
judgment. (14) In spite of any procedural defect, the trusts' or trustees' claims were presented to the
court on the merits. We overrule Crescendo's ninth issue.

8. Award of Costs

 Crescendo's tenth issue claims the trial court's conditional award of costs to the Brices
violated the Open Courts provision of the Texas Constitution or section 31.007(B)(2) of the Civil
Practice & Remedies Code and Texas Rule of Civil Procedure 140. We note that the Open Courts
provision applies only to statutory restrictions on cognizable common law claims. See Federal Sign
v. Texas S. Univ., 951 S.W.2d 401, 410 (Tex. 1997). Furthermore, Crescendo waived its Open
Courts argument because it was never raised in the trial court.

 Crescendo challenges both the conditional nature of the award and the determination of the
amount of costs. Costs were awarded to the Brices only if Crescendo appealed. While our research
failed to reveal caselaw on costs, a trial court may not penalize a successful appeal through the
unconditional award of attorneys fees. See In re Ford Motor Co., 988 S.W.2d 714, 721 (Tex. 1998);
Musgrave v. Brookhaven Lake Property Owners Ass'n, 990 S.W.2d 386, 403 ( Tex. App.-Texarkana
1999, pet. denied). The award would necessarily be reversed if Crescendo's appeal is successful,
because the Brices would no longer be the "successful party" below and would no longer be entitled
to costs under the rule. The award only occurs if there is an unsuccessful appeal. Such an award
seems designed only to discourage appeals of dubious merit. We hold Crescendo has failed to show
an abuse of discretion in the conditional award of costs where Crescendo's appeal is unsuccessful.

 Crescendo also challenges the portion of the award representing certified copies of
depositions and trial transcripts. Crescendo argues Texas Rule of Civil Procedure 140 prohibits the
recovery for copies of depositions. The rule provides, "No fee for a copy of paper not required by
law or these rules to be copied shall be taxed in the bill of costs." Tex. R. Civ. Proc. 140.
Crescendo also argues the costs of transcripts of testimony elicited during trial are not recoverable,
citing Shenandoah Associates v. J & K Properties, Inc., 741 S.W.2d 470, 487 (Tex. App.-Dallas
1987, writ denied) (holding, inter alia, costs of testimony transcripts were not recoverable, but
transcript fees and deposition costs were recoverable).

 The assessment of costs will be reversed on appeal only if the trial court abused its discretion.
 Allen v. Crabtree, 936 S.W.2d 6, 7-8 (Tex. App.-Texarkana 1996, no writ). Rule 131 states, "The
successful party to a suit shall recover of his adversary all costs incurred therein, except where
otherwise provided." Tex. R. Civ. Proc. 131. A court may include the following items in awarding
costs:

 (1) fees of the clerk and service fees due the county;

 (2) fees of the court reporter for the original of stenographic transcripts necessarily
obtained for use in the suit;

 (3) masters, interpreters, and guardians ad litem appointed pursuant to these rules and
state statutes; and

 (4) such other costs and fees as may be permitted by these rules and state statutes.


Tex. Civ. Prac. & Rem. Code Ann. § 31.007(b) (Vernon Supp. 2001). Also held recoverable in
Allen are "deposition costs and filing, court reporter, transcript, and subpoena/citation fees." Allen,
936 S.W.2d at 8 (citing Shenandoah, 741 S.W.2d at 487).

 Transcripts "necessarily obtained for use in the suit" seems to obviously include depositions
and trial testimony used to question witnesses and prepare for argument at trial. The Brices are not
recovering for "making copies" as prohibited by Rule 140. The expense of taking depositions has
0long been recognized as a chargeable item of court costs. See Wallace v. Briggs, 348 S.W.2d 523,
527 (Tex. 1961). Awarding costs for certified copies of depositions which may be admitted at trial
does not violate Rule 140. As for trial testimony transcripts, Shenandoah was decided before section
31.007 was effective. We hold Crescendo has failed to show the trial court abused its discretion by
awarding the costs of depositions and testimony transcripts. We overrule Crescendo's tenth issue.

9. Cumulative Error

 Crescendo's eleventh issue raises cumulative error. Crescendo asserts four particular errors
were harmful in their combined effect: the directed verdict in favor of the Brices on aider and abettor
liability; the grant of thirty-nine limine requests blocking consideration of evidence; (15) the denial of a
spoliation instruction; and the conflict in the jury's answers to questions two (BFI/ICBIY did not
violate the Texas Securities Act) and twelve (BFI/ICBIY directors Holt and Amos were guilty of
conspiracy).

 We have held there is no error in any of these specific issues and examined harm only as to
the exclusion of evidence. Because we conducted a harm analysis on only one of these issues, there
are not multiple errors to examine for cumulative effect. We need not determine whether and to what
extent the cumulative error doctrine exists under Texas law because the issue is not presented in this
case. (16) We overrule Crescendo's eleventh issue.

 The judgment of the trial court is affirmed.


 Tom Rickhoff, Justice

Publish

1. During Scott's securities scheme, Bill and Julie each owned 43% of the stock in BFI. Until March of 1994,
Bill was Chairman and CEO of BFI, while Julie was President of BFI and CEO of ICBIY. From March of 1994 to
March of 1996, James Amos was the CEO of BFI and ICBIY. The Brices began as employees of ICBIY in 1977 while
college students in Dallas, purchased both existing ICBIY stores in 1978, and sold the business to Yogen Früz World
Wide, Inc. for $14,000,000 in March of 1996. The corporation settled after the change in ownership.
2. Scott and his companies eventually obtained seven master franchises. Three are involved in this case:
Carribean Basin (October 1991); United Kingdom (August 1992); and Australia (October 1993). The plaintiffs
invested in specific proposed and existing stores in the three regions ($1.8 million) and in the master franchisees,
Scott's three Cayman Islands corporations: Lions Paw, Ltd.; Hawk Wing, Ltd.; and Adler, Ltd. ($555,000).
3. Horner was paid $10,000 (apparently for legal fees) by the plaintiffs in settlement.
4. The only written evidence of Amos's communications was weekly e-mails which were erased. The e-mails
will be discussed under Crescendo's spoliation issue.
5. The Brice's were informed by Amos that the charge of misappropriation was because of a conflict and power
struggle between Scott and Talley.
6. The trial court excluded evidence of the Brices' compensation, so we will not consider it here. The
exclusion of the evidence is raised in Crescendo's fifth issue.
7. The UK financial problems began with the master franchisee before Scott. Apparently, there was a major
pricing problem because of import duties and the high cost of transporting frozen yogurt from BFI in Dallas.
8. The letter was written because of the "Cannon memo," which indicated there was a possibility that the
solicitation packet might cause "an inference of endorsement" of the scheme by BFI. The March 1994 memo by BFI's
general counsel Charles Cannon did not mention any fraud or illegality; the only concern was avoiding liability due
to perceived endorsement. The memo referred to three concerns together: the brochures; Holt's letter identifying Hawk
Wing as a franchisee; and Amos's listing as a reference.
9. While BFI settled before trial, the Brices could be held liable as control persons of BFI under the Texas
Securities Act.
10. A corporation may also be liable for the torts of a vice-principal. See GTE Southwest, Inc. v. Bruce, 998
S.W.2d 605, 618 (Tex. 1999). However, a corporation is not liable for every act of a vice principal and Crescendo did
not request an instruction on vice-principals. The jury was instructed on agency and apparent agency in question one
but not in question two.
11. We are no longer examining Holt and Amos as agents who could cause vicarious liability, but as control
persons who could be held vicariously liable.
12. Crescendo argues the Brices salaries and shareholder withdrawals, totaling approximately $3.2 million
dollars each over 1991-1995, create an inference of concerted action and the sums are the fruits of the illegal
transactions. However, the Brices benefitted primarily from their business's other endeavors; their benefit from the
investment scheme was mostly through the payment of master franchise fees by Scott and his companies. Franchise
fees from Scott totaled $1,121,000 over twenty-four months compared with annual gross revenue for BFI in the
$20,000,000 range from 1990-1995.
13. A similar factual scenario is set out in Ordonez v. M.W. McCurdy & Co., 984 S.W.2d 264 (Tex.
App.-Houston. [1st Dist.] 1998, no pet.). In Ordonez, certain log books were thrown away pursuant to McCurdy's
normal business practice of keeping such logs for only six months. Ordonez, 984 S.W.2d at 274. There was no
evidence that the log books were destroyed for the purpose of concealing them. Id. The court held there was no abuse
of discretion in refusing the instruction. Id.
14. The only potential harm mentioned by Crescendo on appeal would occur after remand.
15. Of course, objections to a motion in limine do not preserve error. We construe this as referring to the five
evidentiary issues raised in Crescendo's fifth issue.
16. Some reported cases refuse to discuss cumulative error points as redundant, while most examine the points
and invariably overrule them. Compare Sanchez v. Brownsville Sports Ctr., Inc., No. 13-97-00436-CV, 2001 WL
114938, at *17 (Tex. App.-Corpus Christi Feb. 8, 2001, no pet. h.) (refusing to address cumulative error point that
"simply restate[s] their eight prior points of error."), and Campbell v. C.D. Payne & Gelderman Securities, Inc., 894
S.W.2d 411, 425 (Tex. App.-Amarillo 1995, writ denied) (noting that disposition of prior ten points of error "obviates
the necessity for a lengthy discussion" of cumulative error point), with, e.g., Weidner v. Sanchez, 14 S.W.3d 353, 377-78 (Tex. App.-Houston [14th Dist.] 2000, no pet.) (overruling cumulative error point), Pitman v. Lightfoot, 937
S.W.2d 496, 537-38 (Tex. App.-San Antonio 1996, writ denied) (same), and Fireboard Corp. v. Pool, 813 S.W.2d
658, 695 (Tex. App.-Texarkana 1991, writ denied) (same).