Don NICHOLAS and Charles Cannon d/b/a Nicholas-Cannon Oil Company a/k/a Cannon Oil Company and Nicholas Petroleum Company, Appellants,

v.

David CROCKER, R.D. Crocker, F.M. Fillingim and Richard Fillingim, Appellees.

No. 12–83–0091–CV.

Court of Appeals of Texas, Tyler.

June 28, 1984.

Rehearing Denied Oct. 4, 1984.

Ronald O. Habitzreiter, Douglas A. Bender, Bender, Walter & Wahlberg, Austin, for appellants.

Gary F. DeShazo, Davis, DeShazo & Gill, Austin, for appellees.

COLLEY, Justice.

On August 21, 1979, plaintiffs/appellees, David R. Crocker, R.D. Crocker, F.M. Fillingim and Richard Fillingim, filed suit against defendants/appellants, Don Nicholas and Charles Cannon, seeking monetary and exemplary damages for alleged fraudulent misrepresentations made by defendants during a course of dealings between the parties wherein defendants sold to plaintiffs fractional working interests in two oil and gas leases in Brown and Eastland Counties; plaintiffs also sought treble damages under the Deceptive Trade Practices and Consumer Protection Act (Section 17.41, et seq., Tex.Bus. & Com.Code).

Plaintiffs alleged in their original petition that they each purchased a small fractional working interest in one or more of four oil and gas wells drilled by defendants, viz., Crenshaw No. 1, Crenshaw No. 2, Crenshaw No. 3, and Anderson No. 1 under the oil, gas and mineral leases; plaintiffs also alleged in the original petition that none of the wells were commercial producers.

On June 27, 1980, plaintiffs filed their first amended original petition asserting for the first time a cause of action based on defendants' violation of the Texas Securities Act, Article 581-1, et seq., Tex.Rev. Civ.Stat.Ann. (Vernon 1964).[1] More specifically, plaintiffs alleged in the amended petition that the interest sold them by the defendants in the wells were securities under the provisions of Article 581-4 of the act and "... were not registered and— were not sold by a licensed person...." Plaintiffs also alleged that the acts and conduct of the defendants relating to the sale and offer of the working interest in such wells to plaintiffs violated the provisions of Article 581-33 A(1) and (2), thereby rendering defendants liable to plaintiffs for the amounts paid for the working interest and a reasonable attorney's fee.

The case went to trial before the court without a jury on August 4, 1980; on May 13, 1981, judgment was rendered and signed in favor of all plaintiffs in the aggregate sum of $42,409.66 for damages and prejudgment interest, attorney's fees in the amount of $2,500.00, and all costs of suit.

Defendants present eighteen points of error challenging the legal and factual sufficiency of the evidence to support the judgment, and complaining of the award of attorney's fees and the denial of their plea of limitation against that part of the plaintiffs' cause of action seeking rescission as to the Crenshaw Wells Nos. 1 and 2, as well as other trial error. We reverse and remand in part, and affirm in part.

In order to put the issues in proper focus, it must be understood that the sale to the plaintiffs of the various interests in the four wells were made as follows:

| | | |
|---|---|---|
| Crenshaw No. 1 | May 23, 1977 | David Crocker only |
| Crenshaw No. 2 | June 22, 1977 | David Crocker, R.D. Crocker & Richard Fillingim |
| Crenshaw No. 3 | August 10, 1977 | Richard Fillingim and F.M. Fillingim |
| Anderson No. 1 | October 13, 1977 | David Crocker, R.M. Fillingim & Richard Fillingim |

A careful reading of the record demonstrates that the Crenshaw wells were drilled in an area in which various producing oil and gas wells had been completed prior to the drilling of defendants' Crenshaw No. 1. The Anderson well was also drilled in an area where producing gas wells were located. These facts were established by exhibits furnished plaintiffs by the defendants and introduced into evidence by the plaintiffs. A careful analysis of David Crocker's testimony reveals that before his investment in Crenshaw No. 1 that defendant Nicholas "... indicated that the test that had been run ... reflected that it was a good well." Sometime after plaintiff David Crocker made his investment in the first well, and before he invested in any subsequent well drilled by the defendants, he testified that he received additional written information on the Brooksmith, Marble Falls Reef Field in Brown

---

**1.** Articles refer to Texas Civil Statutes Annotated (Vernon).

County, in which field all three Crenshaw wells were drilled and completed by the defendants (plaintiffs' exhibit No. 8). The information consisted of a report from Sid Sers who sold the Crenshaw leases to the defendants. The report purported to provide a "synopsis" of the "potential of" the Crenshaw leases and stated that production rates of several gas wells in the field varied greatly; and significantly, contained the statement, "therefore, it must be understood that in order to find large volumes of gas one must drill." The report also concluded that the acreage covered by the defendants' Crenshaw leases were "definitely—development acreage." Also included in the information furnished to plaintiff David Crocker was a copy of a July 1976 drill stem test on a well in the Brooksmith field and a map and copies of a log of one of the wells offsetting the Crenshaw lease. The record shows that while all four wells involved in this dispute were drilled and completed, none were commercial producers; and that none of the plaintiffs received any income on either oil or gas therefrom except plaintiff David Crocker who received $560 from the Anderson No. 1 well.

Before any investments were made by any of the plaintiffs in the Anderson No. 1 well, David Crocker received a letter from defendants regarding the prospects of said well. A map of the area was also enclosed. In summary, the correspondence discussed three separate wells, two gas wells and one oil well producing gas and oil in the area of the proposed drilling site for the Anderson well No. 1, and stated that one gas well had a potential of producing 3,700,000 cubic feet of gas per day, and the other had a potential of 17,000,000 cubic feet per day. The letter represented the Anderson well as a "... lake sand project that has a good chance for production." Essentially, all the negotiations for the sales of these interests were between the defendants and David Crocker. Plaintiffs F.M. Fillingim and Richard M. Fillingim testified that they relied on the judgment of David Crocker. However, David Crocker testified that he had no involvement with anyone regarding the Crenshaw No. 3 well and had no participation in the well of any kind. R.D. Crocker did not testify or appear at trial. R.D. Crocker is David Crocker's father, and Richard M. Fillingim is David Crocker's father-in-law. F.M. Fillingim is a brother of Richard M. Fillingim.

David Crocker also testified that subsequent to the drilling of each Crenshaw well and after the plaintiffs' investments in Crenshaw wells Nos. 1 and 2, defendants kept telling him that such wells were good wells capable of producing.

The trial court's judgment is based on defendants' violations of the Texas Securities Act, Article 581–33 A(1) and (2), Tex. Rev.Civ.Stat.Ann. (Vernon 1964) and (Vernon Supp.1984), and clearly denies recovery to plaintiffs under any other theory.

■ The trial court at defendants' request made and filed findings of fact and conclusions of law. Thus, in our review of the record, and defendants' points of error, we follow the well-established rules in considering defendants' factual insufficiency points that findings of specific facts are tested on appeal in the same manner as jury findings upon special issues; and, that a trial court's findings have the same force and dignity as jury findings. Hence, a trial court's finding of fact will not be disturbed on appeal unless the evidence is factually insufficient to sustain a specific finding or the findings are so contrary to the overwhelming weight of the evidence as to be manifestly wrong. 4 R. McDonald, Texas Civil Practice in District and County Courts § 16.05 p. 11 (Rev.1971); *Paul v. Johnson,* 314 S.W.2d 338 (Tex.Civ.App.—Houston 1958, writ dism'd); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

We first address defendants' points of error 8 and 13 by which they contend that the transactions were exempted from registration under the Securities Act pursuant to the provisions of Article 581–5 Q, and that the causes of action under Article 581–33 A(1) and (2) as to the Crenshaw wells Nos. 1 and 2 were barred by limitations under Article 581–33 C.

■ Earlier in the opinion we set forth the allegations contained in plaintiffs' original and first amended petitions filed on August 21, 1979, and June 27, 1980, respectively. Since the original petition is not subject to the plea of limitations, and the first amended original petition is not based on "a new distinct or different transaction and occurrence," neither is the amended petition subject to the plea of limitations asserted by defendants. Article 5539b, Tex.Rev.Civ.Stat.Ann. (Vernon 1958); *Leonard v. Texaco, Inc.*, 422 S.W.2d 160, 166 (Tex.1967). Defendants' point of error 13 is overruled.

■ Under Rule 299, Tex.R.Civ.P., where one or more factual elements of a theory of recovery or defense have been expressly found by the trial court, "... omitted unrequested elements *where supported by evidence*, will be supplied by presumption [by the appellate court] in support of the judgment." (Emphasis supplied.) *F.R. Hernandez Const. v. National Bank of Commerce*, 578 S.W.2d 675 (Tex.1979). In the case at bar, the trial court made various express findings that at various times the defendants made statements to plaintiffs that the Crenshaw wells Nos. 2 and 3 were "good wells"; that Crenshaw well No. 1 was the "best well in the field and that Crenshaw No. 2 well would be just as good"; that Crenshaw No. 2 "had been drilled and tested and it was a good commercial well." These express findings do not include a finding that such statements were made *before* the sales in each well were made by the defendants to the various plaintiffs. Article 581–33 A(2) (Vernon 1964) renders a defendant liable to a plaintiff if the defendant sells a security "... *by means* of an untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made *not misleading....*" (Emphasis supplied.) We construe this statute to mean that in order for the plaintiff/buyer to prevail, he must introduce evidence that the untrue statements relate to the security purchased and induced the purchase thereof. Thus untrue statements made about a security by a seller to the buyer thereof at a time when the buyer has already purchased the security are not the "means" by which the security was sold. It follows then, that if a buyer was not induced to purchase a security by an untrue statement made after the purchase, he could not have been misled thereby, and no further statements respecting such security are required to explain the original statement so made under the provisions of the above statute.

Finding of fact No. 25 reads: "Defendants represented to Plaintiffs that the Anderson No. 1 Well was an outstanding opportunity and would produce 10,000 to 17,000 million [sic] cubic feet of gas per day."

Finding of fact No. 27 reads: "Defendants failed to explain to David R. Crocker, Richard M. Fillingim and F.M. Fillingim why they did not recover any return on their investments on the Anderson No. 1 Well, although Defendants were asked for an explanation on many occasions."

■ Upon a consideration of all the evidence, we conclude that the trial court's implied findings that the transactions between the parties were not exempt from registration under the Texas Securities Act arising from findings of fact Nos. 30 and 31 that the working interest sold in the wells were not registered under the Texas Securities Act, and that none of the defendants were licensed by the Securities Commission, is against the overwhelming weight of the evidence. The record reveals without dispute that the interests sold to the plaintiffs resulted from personal and private dealings between defendant Nicholas and plaintiffs David Crocker and Richard M. Fillingim. There is no evidence that public solicitation or advertising was resorted to by the defendants. In fact, as we construe it, the record shows that plaintiff David Crocker initially sought out Nicholas after learning of the prospective drilling operations to be conducted by the defendants through a fellow officer in the bank where Crocker worked. Further, the evidence conclusively shows that the total numbers of sales by the defendants (joint

owners) in each Crenshaw well and in the Anderson lease were less than thirty-five. Plaintiffs argue that since more than thirty-five separate sales of working interests in the Crenshaw leases were made by defendants, that the interests sold in the three Crenshaw wells were not exempt from registration under the Securities Act. The question appears to be one of first impression. Article 581–5 Q reads in pertinent part as follows:

"Except as hereinafter in this Act specifically provided, the provisions of this Act shall not apply to the sale of any security when made in any of the following transactions and under any of the following conditions, ... that is to say, the provisions of this Act shall not apply to any sale, offer for sale, solicitation, subscription, dealing in or delivery of any security under any of the following transactions or conditions:

. . . . .

Q. The sales of interest in and under oil, gas or mining leases, fees or titles, *or contracts relating thereto*, where (1) the total number of sales by any one owner of interests, whether whole, fractional, segregated or undivided in any single oil, gas or mineral lease, fee or title, *or contract relating thereto*, shall not exceed thirty-five (35) within a period of twelve (12) consecutive months; and (2) no use is made of advertisement or public solicitation; ...." (Emphasis added.)

In this case, it is undisputed that fewer than thirty-five separate sales of working interest were made by defendants in each of the three Crenshaw wells. Each well was drilled on a segregated twenty-acre tract out of the Crenshaw leasehold estate, and the interest sold was limited to the well and the acreage surrounding it. It is undisputed that fewer than thirty-five separate sales were made by the defendants in the Anderson lease in Eastland County. In addition, as earlier noted, no public solicitation or advertisement was carried out by the defendants in negotiating the sale of the interest in any of the four wells here involved. Thus on these facts, we conclude

that under the provisions of Subdivision Q of Article 581–5 the sales of the interest in the three Crenshaw wells and the Anderson lease are exempt from registration under the Texas Securities Act. The assignments of the working interest in each individual well amounted to a "... sale of interest [in] a contract relating ..." to the underlying oil, gas and mineral leases covering the Crenshaw lands. Point 8 is sustained.

The record reveals that all oral representations made to David Crocker by defendant Nicholas respecting the prospects of production from Crenshaw wells Nos. 2 and 3 and Anderson well No. 1 were made *after* the investments had been made by the various plaintiffs therein. The Crenshaw well No. 1 had been drilled and tested on May 19, 1981, and David Crocker invested therein on May 23, 1981. The evidence is sufficient to support the trial court's findings of fact 5(b)(c) and 9. Defendants' point of error No. 4 is overruled.

Plaintiffs argue that following the drilling and completion of the Crenshaw wells Nos. 2 and 3, defendants continually represented to the plaintiffs that each such well was a "good well" and would produce gas in commercial quantities and that such representation constituted untrue statements of material facts entitling them to rescission on each of these wells. Plaintiffs' argument, in effect, is that after the completion of Crenshaw No. 1, the plaintiffs were informed that it was a good well and plaintiffs were thereby induced to invest in Crenshaw No. 2, offsetting No. 1 and so on. In other words, plaintiffs relied on defendants' representations that each prior well was a "good" well with high potential as an untrue statement by means of which they were led to invest in the drilling of the next well in the drilling program of defendants. Plaintiff David Crocker testified, however, on cross-examination, that "... because I felt that No. 1 (Crenshaw) would pay back for No. 1 and No. 2 (Crenshaw), I went ahead and invested in No. 2." Crocker also testified on

cross-examination when questioned about defendants' representations about Crenshaw No. 2, that he was told that No. 2 would be an offset well to No. 1 and "... the likelihood of success was very good. No assurances, no guaranties...." There is no evidence in the record tending to prove that the producing wells adjoining the Crenshaw and Anderson leases were not as represented to the plaintiffs by the defendants; nor is there any evidence in the record contradicting the truth of any test results produced by the defendants to the plaintiffs respecting the four wells, excepting only Crenshaw well No. 1. On this record excepting the representations made as to the Crenshaw well No. 1, we find no statements were made by the defendants to any plaintiff of material facts *before* the respective sales of interest in the wells to the various plaintiffs which have been proved to be untrue by the evidence respecting such wells. David Crocker is a lawyer and a banker, and he was admittedly aware of the risks inherent in oil and gas ventures. His admissions are demonstrative of a fact well known to reasonably intelligent persons: that oil and gas ventures are at best highly speculative and fraught with high risk. We further note that none of the findings of fact by the trial judge expressly find that the statements and representations made by the defendant Nicholas to the plaintiffs respecting the Crenshaw wells Nos. 2 and 3 and the Anderson well No. 1 were made prior to the investments therein by the various plaintiffs. This being true, the express findings do not support the judgment rendered.

For the reasons stated we sustain defendants' points of error 1, 2, and 3 by which they contend that the findings of the trial court, both express and implied, as to the untrue statements and omissions as to Crenshaw wells Nos. 2 and 3 and Anderson well No. 1, are against the great weight of the evidence.

Because of our ruling on the points discussed, we do not address defendants' remaining points.

That part of the judgment dated May 13, 1981, awarding plaintiff David Crocker the sum of $2,700.00 with accrued interest to that date at the rate of 6% per annum in the amount of $643.56, together with post-judgment interest at the rate of 9% per annum on the amount of $3,343.56, is affirmed; otherwise, the judgment of the trial court is reversed and the cause is remanded to that court for a new trial.

### SUPPLEMENTAL OPINION

Appellees have urged ten points of error in their Motion for Rehearing in this cause. Under points 1 and 2, appellees contend that in our disposition of their evidentiary points of error, we erroneously reasoned that appellees had the burden of disproving the exempt status of the transaction between the parties under the provisions of Article 581–5 Q of the Texas Securities Act. The offending sentence, giving rise to such argument, appears on Page 368 of our opinion and reads: "There is no evidence that public solicitation or advertising was resorted to by the defendants." We recognize that such sentence perhaps represents an unfortunate choice of words and could be construed as implying that we were commenting on the appellees' failure to negative the exemption contrary to the provisions of Article 581–27 of the Texas Securities Act. However, as is made clear by the language on Page 368, both preceding and following such sentence, we, in fact, held that the evidence produced at trial from all sources clearly establishes that no public solicitation or advertisement was involved in the offer and sale of the interest by appellants to appellees.

We have as well carefully reviewed the remaining eight points of error assigned by appellees in their Motion for Rehearing and find them without merit.

Appellees' Motion for Rehearing is overruled.