CRESCENDO INVESTMENTS, INC.; Charles E. Engelman, Individually and as Trustee for the Engelman Family Trust; Encotec International Inc.; Thomas R. Russell; Roger Bean; Christopher B. Ticknor, M.D.; Buford Clemmer; K. Dale Kartchner, M.D., Profit Sharing Plan & Trust; Michael H. Schlatter; Thomas Weiss, M.D.; Robert C. Adair; Bonna L. Loy, as Trustee for the James R. Loy and Bonna L. Loy Revocable Living Trust; Richard W. Miller; MMW Industries, Inc.; Robert H. Thomas; Martha W. Thomas; Raymond B. Ince; Loyce J. Ince; Gibson Plumbing, Inc.; Dale Eppler; Pat Eppler; T.C. Group, Inc.;

Autocommunicaciones, S.A. De C.V.; William Lawler; Carol Lawler; Steve L. Holifield, Jr.; Steve L. Holifield, Sr.; NTT Investments, Ltd. and Gerry O. Williamson, Executrix of the Estate of Joe Williamson, Appellants,

v.

Bill BRICE, Jr. and Julie Brice, Appellees.

No. 04–00–00101–CV.

Court of Appeals of Texas, San Antonio.

May 30, 2001.

Rehearing Overruled Sept. 14, 2001.

Leonard H. Simon, Tina Snelling, Houston, Otto S. Good, Shaddox, Compere, Walraven & Good, San Antonio, for appellants.

James A. Fisher, T. Wesley Holmes, Fitzpatrick Hagood Fisher & Holmes, Dallas, Robert A. Valadez, Shelton & Valadez, P.C., San Antonio, for appellees.

Sitting: TOM RICKHOFF, PAUL W. GREEN and SARAH B. DUNCAN, Justices.

Opinion by: TOM RICKHOFF, Justice.

In eleven appellate issues, Crescendo Investments, Inc. and the other named plaintiffs (hereinafter "Crescendo" collectively) challenge the sufficiency of the evidence, and complain the trial court erred in granting a directed verdict, resolving conflicting jury answers, five evidentiary rulings, failing to give an instruction regarding spoliation of evidence, refusing to allow the substitution of certain parties, and granting an award of costs. Finally, Crescendo raises a cumulative error issue. We affirm.

## Factual and Procedural History

The plaintiffs were the victims of an investment scheme directed by Hugh Scott. Appellees Bill and Julie Brice are the only remaining defendants. The Brices owned Brice Foods, Inc., (BFI) which was the general partner in a limited partnership which owned the franchise (and some actual shops) of "I Can't Believe It's Yogurt!" (ICBIY).[1] Scott operated various Cayman Islands corporations which obtained master franchises from BFI/ICBIY to develop large international areas.[2]

The master franchise agreements with Scott were negotiated and signed on behalf of BFI by James Amos, President of International Development (1991–1996) and Chief Operating Officer (1994–1996) of BFI/ICBIY. Peter Holt, Director of International Development, was also involved in international franchising. Scott obtained the master franchises for his corporations and limited partnerships and created other companies to conduct fund raising.

Sale of securities through Scott's companies and co-operators began in April 1992. The sales were made through cold-calling operations followed up by mailed packages. Of these sellers, Crescendo called only Michael Horner as a witness.[3] The securities sold included stock in the Cayman Island Corporations and other revenue interests.

Most investments consisted of an interest in the profits or gross revenues of proposed yogurt shops to be developed by Scott. Investor packages explained these joint ventures with Scott's business entities. Included in the packages were letters from BFI confirming that Scott's companies were master franchisees. These solicitations of shares were for "accredited investors" in the United States, who apparently may purchase this type of foreign investment only if they have a net worth of over $1,000,000 or annual income over $200,000.

Two plaintiffs received BFI's domestic franchise brochure. They had expressed independent interest in becoming franchisees. Crescendo relies heavily on this brochure to implicate the Brices and BFI. The brochure explained what BFI was looking for in franchisees, namely experience and financial means. Crescendo argues throughout that because Scott was not so experienced and was not in great financial shape, these brochures were misrepresentations about Scott.

Scott could be viewed as running a partially legitimate yogurt business, with several shops and significant purchases of yogurt from BFI. By late 1994, however, he was having financial difficulties which caused him to default on obligations owed to BFI. In September of 1995, default in

---

1. During Scott's securities scheme, Bill and Julie each owned 43% of the stock in BFI. Until March of 1994, Bill was Chairman and CEO of BFI, while Julie was President of BFI and CEO of ICBIY. From March of 1994 to March of 1996, James Amos was the CEO of BFI and ICBIY. The Brices began as employees of ICBIY in 1977 while college students in Dallas, purchased both existing ICBIY stores in 1978, and sold the business to Yogen Früz World Wide, Inc. for $14,000,000 in March of 1996. The corporation settled after the change in ownership.

2. Scott and his companies eventually obtained seven master franchises. Three are involved in this case: Carribean Basin (October 1991); United Kingdom (August 1992); and Australia (October 1993). The plaintiffs invested in specific proposed and existing stores in the three regions ($1.8 million) and in the master franchisees, Scott's three Cayman Islands corporations: Lions Paw, Ltd.; Hawk Wing, Ltd.; and Adler, Ltd. ($555,000).

3. Horner was paid $10,000 (apparently for legal fees) by the plaintiffs in settlement.

obligations to BFI caused termination of the master franchise agreements.

Crescendo went to trial on claims of securities fraud and civil conspiracy. Scott and the Brices were the only defendants to go to trial. The jury found, *inter alia*, that Scott, Amos, and Holt were involved in a conspiracy. Amos and Holt had settled before trial, and, after the verdict, Scott settled by way of a non-dischargeable agreed judgment in his bankruptcy case for $1,500,000. The Brices were wholly successful below. Crescendo's claims against the Brices may be summarized into three general areas: (1) the Brices were aiders and abettors of the fraudulent sale of securities; (2) the Brices were participants in the civil conspiracy; and (3) the Brices were liable as control persons of BFI/ICBIY, under the Texas Securities Act.

## Discussion

### 1. Directed Verdict

Crescendo's first and second issues assert the trial court erred in granting a directed verdict. The court granted the Brices' motion for directed verdict on the claim of aider and abettor liability under the Texas Securities Act and Julie's motion on the conspiracy claim. On appeal of a directed verdict, we review all the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *See Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994) (per curiam). A directed verdict is appropriate "if no evidence of probative force raises a fact issue on the material questions in the suit." *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.* 29 S.W.3d 74, 77 (Tex.2000). A court may direct a verdict when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery. *See id.* We must affirm a directed verdict if the record discloses a ground that establishes, as a matter of law, that the movant was entitled to judgment, even though the ground was not embodied in the motion for directed verdict. *Gonzales v. Willis,* 995 S.W.2d 729, 740 (Tex.App.—San Antonio 1999, no pet.).

Crescendo must show a fact question as to whether the Brices themselves acted as aiders or abettors. Under the Texas Securities Act, to establish liability of an aider and abettor, a plaintiff must show the following: (1) a primary violation of securities laws occurred; (2) the aider had general awareness of its role in this violation; (3) the aider rendered substantial assistance in this violation; and (4) the aider either intended to deceive plaintiff or acted with reckless disregard for the truth of the representations made by the primary violator. *Frank v. Bear, Stearns & Co.,* 11 S.W.3d 380, 384 (Tex.App.—Houston [14th Dist.] 2000, pet. denied); *see* TEX.REV.CIV.STAT. art. 581–33F(2) (Vernon Supp.2001).

The primary violations were committed by Scott, his companies, and his co-conspirators by absconding with investor funds instead of fully developing the proposed stores. Crescendo admits the Brices' testimony tends to show they were uninformed about the international franchise agreements and relied on Amos to manage international franchising. Crescendo claims the Brices were aiders and abettors because they were educated, experienced franchise executives who owned, managed, and controlled their business, and received substantial compensation. There was also testimony that the Brices were involved in the day-to-day operations of the company and knew of Scott's master franchise holdings, development delays, and late payment of franchise obligations. There was also testimony that Amos regu-

larly reported to the Brices.[4] Crescendo makes much of the fact that Julie knew Scott was raising money from investors as early as November of 1992. Finally, there was an allegation from one of Scott's money raisers (Larry Talley) that one million dollars was unaccounted for and misappropriated in February of 1994.

The Brices argue they did not provide substantial assistance to the violation, did not act with "general awareness," or with the requisite intent. We agree. While the Brices' corporation granted franchises and their corporate officers (Amos and Holt, whom the jury found conspired with Scott) were acting as references for Scott, the Brices were not used as references. Substantial assistance was also rendered by Amos granting the ICBIY franchise. There is no evidence the Brices acted with general awareness of their role or with the necessary intent regarding the representations made by Scott's companies. All the evidence suggests the Brices were assisting a franchisee in the yogurt business. Crescendo claims the Brices aided by allowing Scott to use their reputation and celebrity status by allowing BFI/ICBIY brochures to be used. There was no deception or misrepresentation in their own reputation and celebrity status and in BFI's promotional materials. The Brices' actions do not show intent to deceive or reckless disregard for the truth of the representations that could conceivably be attributed to them. Finally, even if they knew Scott was absconding invested funds,[5] the Brices did not substantially assist the violation i.e., the fraud. The Brices did not assist Scott in selling fraud-

ulent securities or diverting money. To be an aider and abettor, there must be evidence of general awareness and substantial assistance of the *violation* with the necessary intent. Because the Brices were not assisting the violation, we overrule Crescendo's first issue.

 Crescendo's second issue asserts the court erred in granting a directed verdict on the conspiracy claim against Julie. A civil conspiracy under Texas Law "is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Firestone Steel Prods. v. Barajas,* 927 S.W.2d 608, 614 (Tex.1996). There are five essential elements of a conspiracy: (1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the objective or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Massey v. Armco Steel Co.,* 652 S.W.2d 932, 934 (Tex.1983). The meeting of the minds requirement requires knowledge of the course of action and specific intent. *See Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 719 (Tex.1995).

The jury found that Scott, Amos, Holt, and Horner engaged in a conspiracy to defraud investors commencing in May of 1992. Crescendo asserts there is evidence that Julie joined the conspiracy at some later time. Crescendo argues Julie's participation in the conspiracy is evidenced by the Brices' substantial salaries and shareholder withdrawals between 1991 and 1995.[6] Crescendo also points to the Brices' knowledge of financial problems in

---

4. The only written evidence of Amos's communications was weekly e-mails which were erased. *The e-mails will be discussed under Crescendo's spoliation issue.*

5. The Brice's were informed by Amos that the charge of misappropriation was because of a

conflict and power struggle between Scott and Talley.

6. The trial court excluded evidence of the Brices' compensation, so we will not consider it here. The exclusion of the evidence is raised in Crescendo's fifth issue.

the UK operations,[7] that Scott was raising money, and that ICBIY brochures were included in the promotional materials. In March of 1994, because of concerns about the promotional materials, Amos wrote a letter to Scott requesting a change in the materials to eliminate any chance BFI would be liable for the actions of Scott and his corporations.[8] It was not until June of 1995 that BFI insisted on the changes. Crescendo argues that Julie was a part of the conspiracy because she, as president of the company, did not cause the changes in the materials sooner. Finally, in late 1994, the Brices learned that one of Scott's money-raisers (Talley) accused Scott of diverting one million dollars.

This evidence does not raise a fact question as to Julie's involvement in the conspiracy. The conspiracy's unlawfulness was not merely "fund-raising," despite Crescendo's framing of the issue as such. The real issue was the fraudulent nature of the fund-raising because of the conspirators' deception and conversion of investor funds. Julie's knowledge of fund-raising and the use of ICBIY brochures by a *franchisee* do not tend to prove her involvement in an illegal conspiracy. Furthermore, cash flow problems would be a good reason to expect a master franchisee to attempt to raise money through investment. As to the disclaimers on the brochures, Amos informed the Brices that he met with Scott and took care of the problem as soon as the issue arose.

Finally, there is Julie's awareness of the accusation that Scott was misappropriating investor funds. Amos testified Talley made the complaint in late 1994. However, it was Amos's impression that Talley and Scott were involved in a power struggle over control of their business. With that seemingly legitimate reason to ignore or discount the accusation, Julie's actions after the complaint appear proper. She would be completely justified in relying on her executive, Amos, and his assessment. His job was to manage the international division. The evidence does not create an inference of Julie's intent to be involved in an illegal conspiracy because it is an equally plausible inference that she was not involved. We overrule Crescendo's second issue.

## 2. Sufficiency of the Evidence

 In two issues, Crescendo contends the evidence was legally and factually insufficient to support the jury's verdict. In attacking the legal sufficiency of an adverse finding to an issue on which it had the burden of proof, Crescendo must demonstrate that the evidence establishes all necessary facts as a matter of law. *See Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991); *Cruz v. Hinojosa,* 12 S.W.3d 545, 551 (Tex.App.—San Antonio 1999, pet. denied). We must first examine the record for evidence that supports the jury's finding, ignoring all evidence to the contrary. *See Cruz,* 12 S.W.3d at 551–52. Second, if no evidence supports the jury's finding, we examine the entire record to determine whether the

---

7. The UK financial problems began with the master franchisee before Scott. Apparently, there was a major pricing problem because of import duties and the high cost of transporting frozen yogurt from BFI in Dallas.

8. The letter was written because of the "Cannon memo," which indicated there was a possibility that the solicitation packet might cause "an inference of endorsement" of the scheme by BFI. The March 1994 memo by BFI's general counsel Charles Cannon did not mention any fraud or illegality; the only concern was avoiding liability due to perceived endorsement. The memo referred to three concerns together: the brochures; Holt's letter identifying Hawk Wing as a franchisee; and Amos's listing as a reference.

contrary proposition (Crescendo's proposition) is established as a matter of law. *Id.*

■ In a factual sufficiency challenge, the party who had the burden of proof must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Id.* In reviewing factual sufficiency, we consider all the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.; see Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

■ In its sixth issue, Crescendo argues there is no legally and factually sufficient evidence to support the jury's finding in question two that BFI/ICBIY[9] did not violate the Texas Securities Act. A seller of securities may be liable if it offers or sells a security by means of an untrue statement of a material fact or an omission of a material fact necessary to prevent statements made from being misleading. *See* TEX.REV.CIV. STAT. ANN. art. 581–33A(2) (Vernon Supp.2001). Crescendo must introduce evidence of misleading statements by BFI/ICBIY that relate to the security purchased and induced the purchase thereof. *See Nicholas v. Crocker,* 687 S.W.2d 365, 368 (Tex.App.—Tyler 1984, writ ref'd n.r.e.); *cf. Pitman v. Lightfoot,* 937 S.W.2d 496, 531(Tex.App.—San Antonio 1996, writ denied) (construing article 581–33B (liability of buyers) of the Texas Securities Act in light of *Nicholas* ). A statement made after purchase of the securities could not induce purchase and is therefore not relevant. *See Nicholas,* 687 S.W.2d at 368.

■ The liability of a corporation for torts committed by its agents is governed by the same rules as those that determine the liability of any other principal. *See Wal–Mart Stores, Inc. v. Odem,* 929 S.W.2d 513, 530 (Tex.App.—San Antonio 1996, writ denied). Any recovery against a corporation for tort must be based on the wrongful act of an officer or agent, within the course or scope of his employment. *Id.*

■ BFI/ICBIY's alleged statements were made by Holt, Amos and one of Amos's assistants, Debbie Ryan. They relate to Scott's ability, reputation, good standing with BFI/ICBIY, the opportunity for profit, and his meeting the master franchisee requirements. Despite these statements by executives of BFI, the jury found BFI did not violate the Texas Securities Act. Considering the evidence, the jury may have found that the conspirators Holt and Amos made these statements, but that they were not imputed to BFI.[10] Furthermore, the statements are not false as they relate to the legitimate yogurt business or are vague references to Scott's abilities or something similar.

In question one, the jury found BFI/ICBIY was a seller of securities. The resolution of this issue turns on whether BFI/ICBIY made necessary misrepresentations of material facts or was vicariously liable for the acts of its officers and employees. Crescendo argues the actions of Holt and Amos are imputed to BFI/ICBIY, as well as the actions of the Lions Paw companies which were marketing the securities. Assuming there is a fact question as to

**9.** While BFI settled before trial, the Brices could be held liable as control persons of BFI under the Texas Securities Act.

**10.** A corporation may also be liable for the torts of a vice-principal. *See GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 618 (Tex.1999).

However, a corporation is not liable for every act of a vice principal and Crescendo did not request an instruction on vice-principals. The jury was instructed on agency and apparent agency in question one but not in question two.

whether there are misleading statements of material fact imputed to BFI which induced each purchase, Crescendo has not proven its contention as a matter of law or that the finding is against the great weight of the evidence. We overrule Crescendo's sixth issue.

■■■ Crescendo's seventh point of error asserts there is no legally or factually sufficient evidence to support the jury's finding that Bill was not part of the conspiracy that damaged the plaintiffs. Crescendo admits that this is *not* a case of piercing the corporate veil, then attempts to pierce the same. Its principal argument is that the economic reality of the situation is that Bill reaped the real rewards of the conspiracy and that he "did nothing while allowing his directors [conspirators Amos and Holt] to run his company." The evidence and the jury's findings demonstrate that Amos and Holt were conspirators. There is abundant evidence supporting the verdict. It is not our duty to re-weigh evidence or assess credibility. Allowing his officers to run the company and failing to adopt more prudent company policies does not prove Bill participated in the conspiracy. Crescendo argues that Bill's shortcomings as a supervisor prove he was involved in the conspiracy. The only evidence against Bill is the acts of his corporation or its officers. Bill's own testimony provides legally sufficient evidence to support the verdict. Crescendo has not proven as a matter of law that Bill was a part of the conspiracy or that the jury's finding is contrary to the great weight of the evidence. We overrule Crescendo's seventh issue.

### 3. Conflicting Jury Answers

■■■ Crescendo's third issue claims the answers to two jury questions are conflicting. In reviewing the jury findings for conflict, the threshold question is whether the findings concern the same material fact. *Bender v. Southern Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980). If there is any reasonable basis upon which jury answers can be reconciled, a court may not strike them as conflicting. *Id.* We must reconcile apparent conflicts in the jury's findings if reasonably possible considering the state of the pleadings, evidence, manner of submission, and the other findings. *Id.*

The jury found in question twelve that Scott, Horner, Amos, and Holt were part of a conspiracy that damaged the plaintiffs. In question one, the jury found that BFI/ICBIY sold or offered to sell securities to the plaintiffs. In question two, however, the jury found that BFI/ICBIY did not violate the Texas Securities Act. Crescendo argues BFI/ICBIY must be liable (and therefore the Brices as control persons) because, "no ... evidence was ever raised to rebut the presumption that Amos and Holt were acting in a capacity other than as directors and agents of BFI/ICBIY." Crescendo seems to argue that we must presume Holt and Amos, officers of BFI, were acting as agents of the corporation. There is no such presumption. Crescendo had the burden to plead, prove, and obtain a verdict on an agency theory.

The conflict is easily reconciled. The jury could have found BFI was a seller because its brochures and other information was sent out with Scott's solicitations. These brochures contained legitimate information about the yogurt business. There were also newspaper articles chronicling the Brices' business success and a letter indicating that Hawk Wing, Ltd. was a master franchise partner. The information pertains to legitimate franchise operations, and Crescendo has not shown the information to be misleading. This legitimate information is the basis for finding

BFI sold or offered to sell securities. The materials attributable to BFI are not as a matter of law material misrepresentations which induced purchase of the securities.

The jury could have found BFI did not violate the Texas Securities Act even though BFI was a seller under the statute and Holt and Amos were a part of the conspiracy. As for the officers of BFI, the jury could have reasonably found Amos and Holt were engaged in the conspiracy, but liability for material misrepresentations was not imputed to BFI. Crescendo has not proven as a matter of law that Amos and Holt were *acting as agents* when they engaged in the conspiracy. Therefore, the findings are reconcilable. Because the allegedly conflicting findings may be reconciled and do not necessarily concern the same material fact, we overrule Crescendo's third issue.

### 4. Trial Court's Failure to Disregard Question Two and Enter Judgment

 In its fourth issue, Crescendo claims the trial court erred in failing to disregard the jury's answer to question two, in which the jury found BFI/ICBIY did not violate the Texas Securities Act because the finding was immaterial. A trial court may disregard a jury finding if the issue is immaterial. *See Spencer v. Eagle Star Ins. Co. of Am.,* 876 S.W.2d 154, 157 (Tex.1994). A question is immaterial when it should not have been submitted, or when it has been rendered immaterial by other findings. *Id.*

 Crescendo claims that because a director and executive of BFI [11] (Holt and Amos) were liable in a securities fraud conspiracy, the Texas Securities Act makes BFI liable as a matter of law. A person who controls a seller ("control per-

son") is jointly and severally liable with the seller to the same extent the seller is liable. *See* TEX.REV.CIV. STAT. art. 581–33F(1) (Vernon Supp.2001). Crescendo claims that because a control person was held liable, the corporation is therefore liable, citing *Summers v. WellTech, Inc.,* 935 S.W.2d 228 (Tex.App.—Houston [1st Dist.] 1996, no writ). *Summers* and the statute, however, do not support Crescendo's claim. *Summers* and the statute state that a control person is liable only if, and to the extent that, the seller is liable. *See Summers,* 935 S.W.2d at 231. The seller in this case, BFI, was not held liable. There is no liability to impute. Crescendo's theory that liability of a control person is imputed to the controlled seller is analogous to arguing that if a principal is liable, then an agent is vicariously liable. The argument has no merit. We overrule Crescendo's fourth issue.

### 5. Exclusion of Evidence

 In its fifth issue, Crescendo challenges five evidentiary rulings. We review the exclusion of evidence under an abuse of discretion standard. *McEwen v. Wal–Mart Stores, Inc.,* 975 S.W.2d 25, 27 (Tex.App.—San Antonio 1998, pet. denied). An abuse of discretion occurs when the court acts without reference to any guiding rules and principles. *Id.* If we find the trial court erred and Crescendo preserved the error, Crescendo has the burden to show the error probably caused the rendition of an improper judgment. *See* TEX. R.APP. P. 44.1(a)(1). To show harm, the excluded evidence must be *controlling* on a material issue and not cumulative of other evidence. *See Williams Distrib. Co. v. Franklin,* 898 S.W.2d 816, 817 (Tex.1995) (per curiam).

---

**11.** We are no longer examining Holt and Amos as agents who could cause vicarious liability, but as control persons who could be held vicariously liable.

Crescendo argues the excluded evidence proves the existence of the civil conspiracy. Crescendo complains of the following exclusions by the trial court:

(1) Salary and Bonus paid to Amos, Holt, and the Brices by BFI. Crescendo claims this evidence shows a motive to assist Scott and shows the Brices must have been very involved in running BFI.

(2) Hawk Wing, Ltd.'s bankruptcy and Holt & Horner's discussion about the bankruptcy and bounced checks between April and June of 1995. Crescendo claims this shows the nature of the prior conspiracy.

(3) Scott, Amos, and Holt's solicitation of investors for the Middle East franchise.

(4) Assurances to investors from Amos and Holt.

(5) Bill's request in 1992 to review investor packages. Crescendo asserts this proves when Bill knew Scott was raising money.

The only defendants still before the court in this case are the Brices. To show error, Crescendo must show there was an abuse of discretion in excluding the evidence and harm as to the claims against the Brices. The second, third, and fourth proffers listed above have nothing to do with the Brices. That evidence is cumulative of other evidence concerning the conspiracy which was proven, and any error in excluding it was harmless.

 Crescendo's first evidentiary claim asserts the trial court erred in excluding the Brices' compensation.[12] Scott's financial contribution to the whole of BFI was limited compared to total revenue. Compensation comes from many sources, and it could be confusing to offer this evidence considering the many revenue sources of BFI/ICBIY. We do not believe the trial court abused its discretion in refusing to admit this evidence. Furthermore, any error would be harmless for a similar reason. The amount of compensation does not prove participation in illegal or inappropriate activities considering the other revenue sources and the whole record.

Crescendo's fifth item was a proffer of Scott's testimony to the effect that Amos told Scott that Bill wanted an investor packet. The court ruled the testimony consisted of unreliable hearsay. Regardless of admissibility, the evidence is cumulative and not controlling on a material issue. No one disputes that Bill knew Scott was raising money. The relevant issues are when the Brices knew Scott was committing fraud and misappropriating the money and whether the Brices were co-conspirators or aiders and abettors. Knowledge of money-raising alone does not prove the Brices' liability. Because the excluded evidence was cumulative and the error, if any, in excluding it was harmless, we overrule Crescendo's fifth issue.

## 6. Spoliation of Evidence

 Crescendo's eighth issue raises spoliation of evidence. The intentional destruction, or spoliation, of evidence relevant to a case may give rise to a presumption that the destroyed evidence would have been unfavorable to its destroyer. *Aguirre v. South Tex. Blood & Tissue Ctr.,*

12. Crescendo argues the Brices' salaries and shareholder withdrawals, totaling approximately $3.2 million dollars each over 1991–1995, create an inference of concerted action and the sums are the fruits of the illegal transactions. However, the Brices benefitted primarily from their business's other endeavors; their benefit from the investment scheme was mostly through the payment of master franchise fees by Scott and his companies. Franchise fees from Scott totaled $1,121,000 over twenty-four months compared with annual gross revenue for BFI in the $20,000,000 range from 1990–1995.

2 S.W.3d 454, 457 (Tex.App.—San Antonio 1999, pet. denied). This presumption may be rebutted by showing that the evidence in question was not destroyed with fraudulent intent or purpose. *Id.* We review a ruling on a spoliation instruction under an abuse of discretion standard. *See id.*

Crescendo complains of spoliation because Bill was found deleting information from his company's network the night before the company's sale to Yogen Früz was completed. That same day, thirteen of the appellants filed suit. There are two parts of the spoliation claim: (1) certain unavailable e-mails; and (2) "other" missing documents. Amos and Bill testified that Amos sent weekly or bi-weekly e-mail reports concerning significant events in the company, including the international division. Despite reasonable search efforts, BFI was unable to locate the e-mails. Secondly, Crescendo claims that other documents were known to exist, but not produced, concerning the Middle East Franchise, Scott's financial unsoundness, and Holt's failure to require disclaimers. Crescendo admits, "some of the missing documents were obtained . . . many were not."

■■■ The Brices argue the spoliation issue was waived. The trial court ruled on the issue in a pretrial hearing. The Brices claim Crescendo never brought forth any evidence on the issue or made an offer of proof at trial. The Brices also argue that because the motion was presented before trial, it only sought an advisory ruling concerning the jury charge. Crescendo did, however, request a spoliation instruction in the charge, but it refers only to the

e-mails Amos sent to the Brices. We hold the vague "missing documents" issue was waived in the trial court because no instruction was requested at trial.

Amos described the e-mails to Bill as "brief summaries of-of what was going on, highlighting what was taking place." Bill's affidavit explained that he was deleting files concerning personal business and separate businesses not being sold to Yogen Früz. Brice also stated he normally erased e-mails after reading them. The affidavit provided the trial court adequate evidence to find the e-mails were not destroyed with fraudulent intent or purpose.[13] Crescendo has failed to show an abuse of discretion. We overrule Crescendo's eighth issue.

## 7. Substitution of Parties

Crescendo's ninth issue argues the trial court erred in refusing to allow substitution of "nominal plaintiffs" for certain trusts. Three trusts were originally named as plaintiffs. After limitations had run, the Brices amended their pleadings and argued a trust is not a legal entity which may sue. Crescendo moved to substitute the trustees for the trusts, so the claims of the nominal plaintiffs would relate back to the original filing. The Brices objected to substitution, but they did not oppose joinder of the trustees because they believed limitations would have barred the trustee's claims. Nevertheless, the trusts' claims were submitted to the jury.

The issue is moot and any error is harmless because we are otherwise affirming the judgment.[14] In spite of any procedural

---

13. A similar factual scenario is set out in *Ordonez v. M.W. McCurdy & Co.,* 984 S.W.2d 264 (Tex.App.—Houston. [1st Dist.] 1998, no pet.). In *Ordonez,* certain log books were thrown away pursuant to McCurdy's normal business practice of keeping such logs for only six months. *Ordonez,* 984 S.W.2d at

274. There was no evidence that the log books were destroyed for the purpose of concealing them. *Id.* The court held there was no abuse of discretion in refusing the instruction. *Id.*

14. The only potential harm mentioned by Crescendo on appeal would occur after remand.

defect, the trusts' or trustees' claims were presented to the court on the merits. We overrule Crescendo's ninth issue.

### 8. Award of Costs

 Crescendo's tenth issue claims the trial court's conditional award of costs to the Brices violated the Open Courts provision of the Texas Constitution or section 31.007(B)(2) of the Civil Practice & Remedies Code and Texas Rule of Civil Procedure 140. We note that the Open Courts provision applies only to statutory restrictions on cognizable common law claims. *See Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 410 (Tex.1997). Furthermore, Crescendo waived its Open Courts argument because it was never raised in the trial court.

 Crescendo challenges both the conditional nature of the award and the determination of the amount of costs. Costs were awarded to the Brices only if Crescendo appealed. While our research failed to reveal caselaw on costs, a trial court may not penalize a *successful* appeal through the unconditional award of attorneys fees. *See In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex.1998); *Musgrave v. Brookhaven Lake Property Owners Ass'n*, 990 S.W.2d 386, 403 (Tex.App.—Texarkana 1999, pet. denied). The award would necessarily be reversed if Crescendo's appeal is successful, because the Brices would no longer be the "successful party" below and would no longer be entitled to costs under the rule. The award only occurs if there is an unsuccessful appeal. Such an award seems designed only to discourage appeals of dubious merit. We hold Crescendo has failed to show an abuse of discretion in the conditional award of costs where Crescendo's appeal is unsuccessful.

Crescendo also challenges the portion of the award representing certified copies of depositions and trial transcripts. Crescen-

do argues Texas Rule of Civil Procedure 140 prohibits the recovery for copies of depositions. The rule provides, "No fee for a copy of paper not required by law or these rules to be copied shall be taxed in the bill of costs." Tex.R. Civ. Proc. 140. Crescendo also argues the costs of transcripts of testimony elicited during trial are not recoverable, citing *Shenandoah Associates v. J & K Properties, Inc.*, 741 S.W.2d 470, 487 (Tex.App.—Dallas 1987, writ denied) (holding, *inter alia*, costs of testimony transcripts were not recoverable, but transcript fees and deposition costs were recoverable).

 The assessment of costs will be reversed on appeal only if the trial court abused its discretion. *Allen v. Crabtree*, 936 S.W.2d 6, 7–8 (Tex.App.—Texarkana 1996, no writ). Rule 131 states, "The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." Tex.R. Civ. Proc. 131. A court may include the following items in awarding costs:

(1) fees of the clerk and service fees due the county;

(2) fees of the court reporter for the original of stenographic transcripts necessarily obtained for use in the suit;

(3) masters, interpreters, and guardians ad litem appointed pursuant to these rules and state statutes; and

(4) such other costs and fees as may be permitted by these rules and state statutes.

Tex. Civ. Prac. & Rem.Code Ann. § 31.007(b) (Vernon Supp.2001). Also held recoverable in *Allen* are "deposition costs and filing, court reporter, transcript, and subpoena/citation fees." *Allen*, 936 S.W.2d at 8 (citing *Shenandoah*, 741 S.W.2d at 487).

Transcripts "necessarily obtained for use in the suit" seems to obviously include depositions and trial testimony used to

question witnesses and prepare for argument at trial. The Brices are not recovering for "making copies" as prohibited by Rule 140. The expense of taking depositions has long been recognized as a chargeable item of court costs. *See Wallace v. Briggs*, 162 Tex. 485, 348 S.W.2d 523, 527 (1961). Awarding costs for certified copies of depositions which may be admitted at trial does not violate Rule 140. As for trial testimony transcripts, *Shenandoah* was decided before section 31.007 was effective. We hold Crescendo has failed to show the trial court abused its discretion by awarding the costs of depositions and testimony transcripts. We overrule Crescendo's tenth issue.

## 9. Cumulative Error

 Crescendo's eleventh issue raises cumulative error. Crescendo asserts four particular errors were harmful in their combined effect: the directed verdict in favor of the Brices on aider and abettor liability; the grant of thirty-nine limine requests blocking consideration of evidence;[15] the denial of a spoliation instruction; and the conflict in the jury's answers to questions two (BFI/ICBIY did not violate the Texas Securities Act) and twelve (BFI/ICBIY directors Holt and Amos were guilty of conspiracy).

We have held there is no error in any of these specific issues and examined harm only as to the exclusion of evidence. Because we conducted a harm analysis on only one of these issues, there are not multiple errors to examine for cumulative effect. We need not determine whether and to what extent the cumulative error doctrine exists under Texas law because the issue is not presented in this case.[16] We overrule Crescendo's eleventh issue.

The judgment of the trial court is affirmed.

DUNCAN, J., concurs in the judgment only.

---

15. Of course, objections to a motion in limine do not preserve error. We construe this as referring to the five evidentiary issues raised in Crescendo's fifth issue.

16. Some reported cases refuse to discuss cumulative error points as redundant, while most examine the points and invariably overrule them. *Compare Sanchez v. Brownsville Sports Ctr., Inc.*, 51 S.W.3d 643, 667–68 (Tex.App.—Corpus Christi 2001, no pet. h.) (refusing to address cumulative error point that "simply restate[s] their eight prior points of error."), *and Campbell v. C.D. Payne & Gelder-mann Securities, Inc.*, 894 S.W.2d 411, 425 (Tex.App.—Amarillo 1995, writ denied) (noting that disposition of prior ten points of error "obviates the necessity for a lengthy discussion" of cumulative error point), *with, e.g., Weidner v. Sanchez*, 14 S.W.3d 353, 377–78 (Tex.App.—Houston [14th Dist.] 2000, no pet.) (overruling cumulative error point), Pitman v. Lightfoot, 937 S.W.2d 496, 537–38 (Tex.App.—San Antonio 1996, writ denied) (same), *and Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 695 (Tex.App.—Texarkana 1991, writ denied) (same).