**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00270-CV**
_____

**ERIC SPRINGSTUN, Appellant**

**V.**

**THE WHARF AT CLEAR LAKE SLIP
MAINTENANCE ASSOCIATION, INC., Appellee**

_____

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 23-07-10483-CV**
_____

**MEMORANDUM OPINION**

Pro se Appellant Eric Springstun ("Appellant" or "Springstun") appeals from

the trial court's summary judgment in favor of Appellee The Wharf at Clear Lake

Slip Maintenance Association, Inc. ("Appellee" or "the Association"). We affirm

the trial court's judgment.

1

Pleadings Filed Before the
Motion for Summary Judgment[1]

On July 20, 2023, the Association filed an Emergency Application for Temporary Restraining Order, Temporary Injunction, Permanent Injunction and Original Petition (the "Petition") against Springstun relating to his alleged actions while serving as a board member for the Association and his actions after his removal from the board. The Association alleged that: Springstun owns a boat slip within the property that is governed by the Association; at its annual meeting in July of 2022, Springstun volunteered to serve on the Board, and he was voted onto the Board as a non-officer Board member; and later in September of 2022, Springstun was voted in as the Association's Vice President, and Kurt Lotero was voted in as the Association's President. According to the Petition, Springstun was later removed from the board on June 15, 2023, for "failure to pay assessments[.]" The Association alleged that when Springstun was on the board he exchanged unauthorized communications with the attorneys representing the Association on internal matters, one of the Association's attorneys informed Springstun that he needed to stop sending communications to her because it was causing legal fees to be incurred and

[1] We include a short discussion of relevant pleadings, rulings, and their contents only as necessary to provide the necessary background to dispose of the issues before us.

that the attorney only communicated with the President, Springstun continued to make unauthorized communications with the attorneys, and eventually the attorneys withdrew from their representation of the Association due to unresolved conflicts. The Association also alleged Springstun engaged in "harassing communications" and made accusations against the Association and became "verbally hostile" to the Association's bookkeeper who also resigned because of the conflict. The Association made additional allegations against Springstun in the Petition, and it sought injunctive relief and a declaratory judgment.

On July 25, 2023, the trial court granted a TRO and set a hearing on the temporary injunction. On August 4, 2023, Springstun filed a pro se Answer and Counterclaim to Temporary Restraining Order and Request for Relief, specifically denying the Association's claims and asserting counterclaims. The Association filed a First Amended Petition and Request for Temporary Injunction and Permanent Injunction. At the temporary injunction hearing, the trial court granted Springstun's request for a continuance and extended the TRO until the hearing on the temporary injunction set for August 17, 2023, which the trial court reset for August 31, 2023.

After the August 31, 2023 hearing, the trial court denied the Association's request for a temporary injunction. Springstun filed numerous pro se motions, notices, and other filings with the trial court. The Association then filed an Original Answer to Springstun's counterclaims, as well as a Rule 91a Motion to Dismiss. On

October 6, 2023, the trial court held a hearing on Springstun's motions, which included "Defendant's Motion to Compel (Board Members)[,]" "Defendant's Motion for Dismissal[,]" and "Defendant's Motion for Expedited Discovery[,]" and on "Plaintiff's Rule 91a Motion to Dismiss Defendant's Counterclaims." That same day the trial court entered an Order denying all of the Defendant's motions and granting the Rule 91a motion to dismiss, and the trial court dismissed Springstun's counterclaims, but it declined to award the Association any attorney's fees.

On November 6, 2023, Springstun, acting pro se, filed what he styled as "Defendant's Counterclaim" against the Association.[2] On November 17, 2023, an attorney appeared on behalf of Springstun and filed a Designation of Attorney in Charge. On December 6, 2023, Springstun's designated attorney filed a Motion for Leave to Withdraw as Counsel, stating, among other things, that after meeting with Springstun, the attorney had learned that "this case is not what [Springstun] led [him] to believe[,]" that Springstun had not paid him any money and would not listen to

---

[2] We note that the record before us indicates that Springstun alleged in "Defendant's Counterclaim" that he had claims against the Association "acting through its board of directors and the individually named members Kurt Lotero, John Oleyar, Nasser Hempel, and Jimmy Schlomach[.]" In later-filed counterclaims, Springstun asserted that his counterclaims were against the Association and its board members "Kurt Lotero, John Oleyar, Nasser Hempel and Jimmy Schlomach," although the individuals were not named as parties to the suit in any of his counterclaims. Several months later on April 30, 2024, Springstun filed a motion for leave to add the individual board members as additional parties. That motion was pending at the time the trial court granted the summary judgment.

sound legal advice, that Springstun "insists upon pursuing an objective that [counsel] considers repugnant or imprudent or with which [counsel] has fundamental disagreement[,]" and that Springstun did not agree to the motion. The motion also alleged the following:

> After being specifically told to no longer talk to the court or file anything else with the court and that all filing needed to go through my office, Mr. Springstun went and changed a continuance, already approved by opposing counsel, to a date no one can make. This is after repeated explanations on why the continuance was needed, the reasons for the continuance, and why, legally, it had to be moved for a potential DTPA counterclaim. Mr. Springstun has provided me no tangible evidence of a counterclaim after 4 weeks of explaining what was need[ed].

On February 23, 2024, the Association filed a Notice of Nonsuit without Prejudice, requesting the trial court to enter the Order of Nonsuit and dismiss the Association's claims against Springstun. The trial court granted the nonsuit.

While his counsel's motion to withdraw was pending, Springstun filed many pro se pleadings including discovery requests and additional motions seeking relief from the court. On March 18, 2024, for example, Springstun filed what he styled as "Counterclaim One" and "Counterclaim Two." In April of 2024, Springstun filed pro se motions about discovery deadlines, seeking permission to video the court proceedings, and requesting remedial action and enforcement of access to records. Springstun also filed his own motions for summary judgment, a motion to address his own attorney's conduct, a motion to proceed pro se and request hearing dates,

and other pro se items. Springstun disputed the allegations made in his counsel's Motion for Leave to Withdraw as Counsel, and he filed pro se responses arguing his attorney was mistaken about what is required to withdraw and disputing what his counsel said about him in the motion.

The Association filed a Traditional and No Evidence Motion for Summary Judgment (the MSJ) on April 24, 2024, which we discuss in depth later in this memorandum opinion. The trial court held a hearing on May 17, 2024, wherein the trial court heard the attorney's Motion for Leave to Withdraw as Counsel. Springstun, Springstun's attorney who filed the Motion to Withdraw, and the attorney for the Association appeared at the hearing. In accordance with the trial court's admonitions during the hearing and the agreements made at the hearing, the attorney filed another motion to withdraw, which was agreed to by opposing counsel and agreed to by Springstun, and the trial court granted the motion on May 17, 2024.

After the entry of the Order granting the Motion to Withdraw which Springstun had agreed to at the hearing, Springstun filed a Second Amended Response to Motion for Leave to Withdraw as Counsel. Therein, Springstun again disputed what his attorney had stated in the first motion to withdraw, Springstun complained about the lack of proper representation he had received from his attorney, and he sought sanctions and disciplinary actions against his attorney.

On May 24, 2024, the trial court entered an Order Granting Counter-Defendant Wharf at Clear Lake Slip Maintenance Association, Inc.'s Traditional and No-Evidence Motion for Summary Judgment. Springstun's live counterclaims at the time the Association filed its MSJ and at the time the trial court granted summary judgment in favor of the Association were those presented in Springstun's pro se "Counterclaim One Against Counter-Defendants" and "Counterclaim Two Against Counter-Defendants[.]"[3] The "Counter Claim One Against the Counter-Defendants[,]" states as follows:

> A. False Fines and Fees (Count A) [] The HOA board's imposition of undocumented fines and fees, purportedly due to previous ownership and coinciding with inquiries into financial mismanagement, raises concerns under the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Com. Code Ann. § 17.46 et seq. The lack of evidence for these charges and their timing may indicate retaliatory practices, potentially violating the DTPA's prohibition against misleading and unfair business actions. This scenario, especially given that Texas law and HOA governance documents clarify financial obligations do not transfer to new owners without a proper lien, challenges the board's claims' validity and suggests deceptive practices in contravention of the DTPA.
>
> B. Defamation of Character (Count B) [] John Oleyar's dissemination of false statements has damaged Springstun's reputation, actionable

---

[3] Springstun alleged that two separate filings were necessary because they are "predicated on the distinct factual and legal bases of each claim, necessitating their individual consideration and resolution" by the trial court. The claims in Springstun's pro se "Counterclaim One Against Counter-Defendants" and "Counterclaim Two Against Counter-Defendants[,]" are amended counterclaims. *See generally* Tex. R. Civ. P. 65 ("Substituted Instrument Takes Place of Original"); *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980) (providing that a court looks to the substance of a pleading to determine the nature of a pleading).

under Texas Civil Practice and Remedies Code §§ 73.001-73.062 (Defamation). Springstun seeks compensatory and punitive damages.

C. Selective Enforcement and Financial Misconduct (Count C) [] The Association's selective enforcement of covenants against Springstun, violating Chapter 209 of the Texas Residential Property Owners Protection Act, warrants injunctive relief and damages for discriminatory treatment.

D. Breach of Contract and Fiduciary Duty (Count D) [] The Board's failure to adhere to the HOA's governing documents and Texas law, particularly the Texas Residential Property Code Chapter 209, constitutes a breach of contract and fiduciary duty. Springstun seeks damages and corrective action.

E. Invalid HOA Presidency (Count E) [] Kurt Lotero's assumption of HOA presidency, in violation of the Texas Property Code and the association's bylaws, requires judicial intervention to invalidate actions taken under his leadership and compensate the community for any resulting harm.

F. Disenfranchisement of Property Owners' Votes (Count F) [] The Association's refusal to accept electronic votes, as allowed under Chapter 209 of the Texas Property Code, disenfranchises property owners. Springstun seeks an order mandating the acceptance of electronic votes and damages for disenfranchisement.

G. Retaliation for Exercising Rights (Count G) [] Actions taken by the Association and its board members constitute retaliation against Springstun for his lawful exercise of rights, in violation of the Texas Residential Property Code and the Texas Civil Practice and Remedies Code on protected speech. Remedies sought include compensatory damages and injunctive relief against further retaliation.

H. Compensatory Damages (Count H) [] For the emotional distress, reputational damage, and financial losses incurred due to the actions of the Association and its board, Springstun seeks compensatory damages under Texas law for tortious conduct.
I. Punitive Damages (Count I) [] Due to the malicious, oppressive, and fraudulent nature of the Defendant's actions, Springstun requests

8

punitive damages as allowed under Texas Civil Practice and Remedies Code § 41.001-41.013 to deter such conduct in the future.

J. Injunction to Remove Board Members and Allow Association Vote (Count J) [] Springstun requests an injunction for the removal of the board members engaged in wrongful conduct and for an order allowing a fair association vote for new board leadership, in accordance with the Texas Property Code and the association's bylaws.

K. Unlawful Use of Association Funds for Frivolous Litigation (Count K) [] The Association's use of funds for litigating baseless claims against Springstun and other property owners warrants restitution and injunctive relief to prevent future misuse of association resources.

L. Additional Relief Sought (Count L) [] Springstun seeks additional relief including the restoration of voting rights, transparency in financial management, and adherence to the Texas Property Code in all future board actions.

The allegations in "Counter Claim Two Against the Counter-Defendants[,]" include

the following:

A. Breach of Fiduciary Duty
   1. Allegations: Counter-Plaintiff alleges that Counter-Defendants have failed in their duty to act in the best interests of the HOA and its members by authorizing the use of HOA funds for litigation purposes not approved within the governing documents and for transactions lacking proper documentation or conducted for personal gain. This behavior contravenes the fiduciary duties established under Texas Business Organizations Code §22.221, which mandates directors of nonprofit corporations to act in good faith and in a manner they reasonably believe to be in the best interests of the corporation.
   2. Specific Law: Additionally, Texas Property Code §209.001 et seq. provides a framework for the operation of property owners' associations, including the fiduciary obligations of those in charge of managing the associations' affairs. The mismanagement and misuse of funds by the Counter-Defendants represent a clear breach of these duties.

B. Misappropriation of HOA Funds
  1. Allegations: Counter-Plaintiff asserts that the Counter-Defendants engaged in unauthorized expenditures and transactions that constitute misappropriation of HOA funds. Such actions are not only outside the scope of their authority but also detrimental to the financial health and governance of the HOA.
  2. Specific Law: This conduct is actionable under Texas Property Code §209.005(c), which governs the collection, management, and expenditure of association funds, and stipulates that such funds must be used solely for the benefit of the association and its members. Misappropriation of these funds directly violates this statutory requirement.

C. Retaliatory Litigation
  1. Allegations: The Counter-Plaintiff claims that litigation initiated by the Counter-Defendants against him was retaliatory, intended to suppress his objections to their management practices. This retaliatory action is in response to the Counter-Plaintiff exercising his rights to question and challenge the Counter-Defendants' stewardship of the HOA.
  2. Specific Law: Such retaliatory conduct may be in violation of Texas Civil Practice & Remedies Code §27.001 et seq., the Texas Citizens Participation Act (TCPA), designed to protect individuals from retaliatory lawsuits that seek to chill the exercise of their rights to free speech, petition, and association. The Counter-Plaintiff's actions, aimed at ensuring proper governance of the HOA, fall under these protected rights.

<u>The Association's</u>
<u>Traditional and No-Evidence Motion for Summary Judgment</u>

The Association filed a Traditional and No-Evidence Motion for Summary Judgment (the "MSJ"), alleging that it was entitled to a summary judgment on Springstun's counterclaims as a matter of law because the Association's individual members would be exempt from liability under the Federal Volunteer Protection Act

and the Texas Charitable Immunity and Liability Act, and that Springstun has no evidence to support any of his alleged claims against the Association.

As evidence in support of its motion, the Association attached the following:

Exhibit A: Declaration of Covenants, Conditions and Restrictions for a Portion of Phase 11a of the Wharf at Clear Lake (The Wharf at Clear Lake Live-Aboard Marina)

Exhibit B: Management Certificate of The Wharf at Clear Lake Slip Maintenance Association, Inc.

Exhibit C: John Oleyar Unsworn Declaration

Exhibit D: Kurt Lotero Unsworn Declaration

Exhibit E: Nasser Hempel Unsworn Declaration

Exhibit F: Jimmy Schlomach Unsworn Declaration

Exhibit G: Bylaws of Wharf at Clear Lake Slip Maintenance Association, Inc.

Exhibit H: Articles of Incorporation of The Wharf at Clear Lake Slip Maintenance Association, Inc.

Regarding Springstun's breach of fiduciary duty claim against the Association, the Association alleged that there is no evidence that there was a fiduciary relationship between Springstun and the Association. As for Springstun's breach of contract claim, the Association alleged that there is no evidence of a valid contract between the Association and Springstun, or that Springstun performed or tendered performance, or that the Association breached the contract, or that Springstun sustained damages from an alleged breach. According to the Association,

11

Springstun's claim for "False Fines and Fees[;]" "Defamation of Character with Involvement of Board Member[;]" "Selective Enforcement and Financial Misconduct[;]" "Invalid HOA Presidency[;]" "Disenfranchisement of Property Owners' Votes[;]" "Retaliation for Exercising Rights[;]" "Compensatory Damages [for] emotional distress, reputational damage, and financial losses incurred due to the actions of the Association and its board[;]" "Punitive Damages[;]" "Injunction to Remove Board Members and Allow Association Vote[;]" "Unlawful Use of Association Funds for Frivolous Litigation[;]" "Additional Relief Sought [for] the restoration of voting rights, transparency in financial management, and adherence to the Texas Property Code in all future board actions[;]" "Misappropriation of HOA Funds[;]" and "Retaliatory Litigation[,]" the Association alleged these are not viable causes of action against the Association, as a matter of law.

<u>Springstun's Opposition to the Association's MSJ</u>

Springstun filed an Opposition to Counter-Defendant's Traditional and No-Evidence Motion for Summary Judgment, an Amended Opposition to Counter-Defendant's Traditional and No-Evidence Motion for Summary Judgment, a Second Amended Opposition to Counter-Defendant's Traditional and No-Evidence Motion for Summary Judgment, and a Third Amended Opposition to Counter-Defendant's Traditional and No-Evidence Motion for Summary Judgment. Springstun made similar allegations as he stated in Counterclaim One and Counterclaim Two, but he

12

did not produce or attach any affidavits, exhibits, or evidence to his responses to the MSJ.

<u>Trial Court's Order and Post-Judgment Pleadings</u>

On May 24, 2024, the trial court signed an Order granting the Association's MSJ and dismissing Springstun's counterclaims against the Association with prejudice. The Order stated that "[a]ll motions not specifically granted herein are denied[,]" and stated it "disposes of all claims and all parties[]" and "is final and appealable." Springstun filed several post-judgment motions, including motions for new trial, and the post-judgment motions were overruled by operation of law. Springstun then filed this appeal.

<u>Appellant's Issues on Appeal</u>

Appellant's pro se brief phrases his issues on appeal as follows:

[1.] Whether the trial court erred in granting summary judgment based on the assertion that HOA board members are exempt from liability under the Federal Volunteer Protection Act and the Texas Charitable Immunity and Liability Act.

[2.] Whether the trial court improperly dismissed Appellant's counterclaims related to procedural irregularities, misuse of association funds, and breaches of fiduciary duties without providing adequate opportunity for their adjudication.

[3.] Whether the trial court's failure to address Appellant's opposition to the immunity claims and counterclaims resulted in procedural unfairness, thereby enabling ongoing harassment and retaliation by Plaintiff's Board of Directors.

[4.] Whether the trial court improperly refused to hear Appellant's motions while an attorney remained on record, despite the attorney's

13

inactivity and delayed withdrawal, thereby denying Appellant meaningful access to the court.[4]

---

[4] In his Amended Reply Brief, he states his issues differently:

1. Did the Appellee improperly invoke statutory immunity under the Federal Volunteer Protection Act (FVPA), 42 U.S.C. § 14501 et seq., and the Texas Charitable Immunity and Liability Act (TCILA), Tex. Civ. Prac. & Rem. Code § 84.001 et seq., despite evidence of gross negligence and intentional misconduct?
2. Did the trial court err in granting summary judgment based on a claim of "no evidence," despite Appellant's production of extensive documentation supporting his counterclaims?
3. Did the combination of attorney misconduct, abandonment, and the trial court's refusal to hear Appellant's motions constitute procedural unfairness and violate due process?
4. Did the trial court's procedural treatment of Appellant, including refusal to hear motions and dismissal with prejudice, violate Appellant's constitutional rights under the Texas and U.S. Constitutions?
5. Did Appellee violate the Texas Rules of Appellate Procedure by failing to cite to the record, omitting a docketing statement, and relying on unsupported factual assertions?
6. Does the cumulative effect of the trial court's errors—including denial of discovery, procedural barriers, attorney abandonment, and improper dismissal—warrant reversal under the cumulative error doctrine?

To the extent the issues listed in the Reply Brief are new or different issues, a party may not add new issues in a reply brief. *See* Tex. R. App. P. 38.3. Additionally, we overruled the motion to strike Appellee's Brief on Appeal. And we note that generally the "cumulative error" doctrine has found little favor in Texas appellate courts. *See Caro v. Sharp*, No. 03-02-00108-CV, 2003 Tex. App. LEXIS 4943, at **24-25 (Tex. App.—Austin June 12, 2003, pet. denied) (mem. op.) (citing *Crescendo Invs. v. Brice*, 61 S.W.3d 465, 481 & n.16 (Tex. App.—San Antonio 2001, pet. denied)). Further, because we have found no errors, we need not consider the cumulative error arguments. *In re BCH Dev., LLC*, 525 S.W.3d 920, 930 (Tex. App.—Dallas 2017, orig. proceeding) (when no errors exist, the appellate court can reject cumulative error arguments).

14

While it is true that pro se pleadings and briefs are generally construed liberally, a pro se litigant is still required to comply with the law and rules of procedure. *See Giddens v. Brooks*, 92 S.W.3d 878, 880-81 (Tex. App.—Beaumont 2002, pet. denied).

Standard of Review

We review grants of summary judgment de novo. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). We take as true all evidence favorable to the non-movant, indulge every reasonable inference in favor of the non-movant, and resolve any doubts in the non-movant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A party moving for a traditional summary judgment meets its burden by proving that there is no genuine issue of a material fact and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c).

When a party moves for both a traditional and no-evidence summary judgment, we first consider the no-evidence motion. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). In our review, we are restricted to considering the arguments the parties presented to the trial court in the written motion or response. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 343 (Tex. 1993). On appeal, the appellate court will not consider any issues or grounds for reversal that were not presented to the trial court by written response to the motion for summary judgment. *See* Tex. R. Civ. P. 166a(c); *Lopez v. Munoz, Hockema & Reed, L.L.P.*,

15

22 S.W.3d 857, 862 (Tex. 2000). If the non-movant fails to meet his burden under the no-evidence motion, there is no need to address the challenge to the traditional motion because it necessarily fails. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

A no-evidence motion for summary judgment is essentially a pretrial motion for directed verdict, which we review for legal sufficiency. *King Ranch, Inc. v Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). Once a no-evidence motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements identified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The nonmoving party must produce summary judgment evidence raising a genuine issue of material fact. Tex. R. Civ. P. 166a(i); *see Mack Trucks*, 206 S.W.3d at 582. A trial court must grant a no-evidence motion for summary judgment unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact as to the challenged elements. Tex. R. Civ. P. 166a(i); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). If the evidence rises to a level that would allow reasonable and fair-minded people to differ in their conclusions, then more than a scintilla of probative evidence exists. *King Ranch*, 118 S.W.3d at 751. "The evidence does not create an issue of material fact if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *First United Pentecostal Church of Beaumont v.*

*Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)). In evaluating whether more than a scintilla of evidence exists, we must view the evidence in the light most favorable to the nonmovant. *Ford Motor Co.*, 135 S.W.3d at 601.

Analysis

We interpret Springstun's second issue as arguing that the trial court erred in granting the Association's no-evidence motion for summary judgment as to Springstun's claims. The Association alleges in its MSJ that there is no evidence to support the elements of Springstun's breach of fiduciary duty and breach of contract claims, that the other alleged causes of action are not viable, and even if they were, that Springstun failed to present evidence in support of those allegations.

The Association filed its suit against Springstun on July 20, 2023. According to the record before us, Springstun conducted written discovery serving Interrogatories, Request for Production, and Request for Admissions on the Association, Springstun filed a Rule 194 Disclosure, and the case had been pending for six months at the time the trial court granted the MSJ.

The record demonstrates that Springstun filed multiple oppositions to the MSJ wherein he opposed the MSJ. In his oppositions to the MSJ, Springstun alleged his claims were "well-grounded in Texas law[,]" he argued his counterclaims, including his breach of fiduciary duty, misappropriation of HOA funds, and retaliatory

17

litigation, "are valid and supported by Texas Statutes, including Texas Property Code §209 and Texas Business Organizations Code §22.221." He argued that the assertion of Volunteer Immunity did not apply to the Association, he alleged he had not had adequate time to complete discovery, he claimed he had shown "ample evidence" of a valid contract between the Association and Springstun "as governed by the Association's bylaws and the Texas Property Code[,]" that he performed by paying his assessments "while the Association breached the contract by mismanaging funds[]" and failing to make necessary repairs, and that he had alleged they caused damage to his reputation.

Springstun did not file any affidavits or other evidence with any of his responses to the Association's MSJ. Merely filing a response to a summary judgment motion or relying on a pleading does not satisfy the burden of coming forward with evidence to respond and create a genuine issue of a material fact to defeat a motion for summary judgment. *Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994); *see also Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 818 (Tex. 2021) (pleadings generally do not qualify as summary judgment "evidence," even when they are sworn or verified). To the extent on appeal Springstun references what he describes as "ample evidence" that he argues supports his claims, we reiterate that our review of the summary judgment is restricted to the evidence, if any, that Springstun presented to the trial court in his written responses

18

to the motion for summary judgment. *See McConnell*, 858 S.W.2d at 343. A trial court is not required to search the record to find "evidence," and merely because Springstun attached documents to his counterclaims does not make those documents "evidence." *See Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex. 1989) (general references to a voluminous record did not direct trial court to evidence on which party relied); *Vadackaneth v. Asariyathu*, No. 05-21-00893-CV, 2023 Tex. App. LEXIS 4001, at *5 (Tex. App.—Dallas June 8, 2023, no pet.) (mem. op.) ("[M]erely attaching documents to a motion or a response to a motion does not make the documents admissible as evidence."); *San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 331 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (a non-movant cannot avoid no-evidence summary judgment by filing voluminous items with a response that states generally that a genuine fact issue has been raised as to each element).

After reviewing the entire record before us, we conclude Springstun failed to produce more than a scintilla of probative evidence to raise a genuine issue of material fact as to any of his claims. The trial court did not err in granting the no-evidence summary judgment for the Association. *See* Tex. R. Civ. P. 166a(i). Because this issue is dispositive of Springstun's counterclaims, we need not address Springstun's first issue addressing the traditional summary judgment. *See Merriman*, 407 S.W.3d at 248 (If the non-movant fails to meet its burden under the no-evidence

19

motion, there is no need to address the challenge to the traditional motion because it necessarily fails.).

In his third and fourth stated issues, Springstun asserts that: the trial court's failure to address or consider Springstun's pro se filings while he was still represented by counsel resulted in procedural unfairness and denied him meaningful access to court; his attorney's ineffectiveness and delayed withdrawal left Springstun without effective representation during pivotal stages of the litigation; by dismissing Springstun's counterclaims the trial court allowed the Association's board members to "engage in retaliatory actions without judicial oversight[;]" the trial court's disparate treatment of Springstun as a pro se litigant violated his equal protection rights under the Fourth Amendment to receive fair and equal treatment in judicial proceedings; the trial court's dismissal of his counterclaims with prejudice without sufficient notice or an opportunity to be heard "may" constitute a violation of his due process rights under the Fourth Amendment; and that he is entitled to remedies under 42 U.S.C. § 1983 and 28 U.S.C. § 1343.

In civil cases, a party is entitled to represent himself or to be represented by an attorney. Tex. R. Civ. P. 7. "However, a party is not entitled to representation partly by counsel and partly pro se." *In re S.V.*, 599 S.W.3d 25, 44 (Tex. App.—Dallas 2017, pet. denied); *In re Sondley*, 990 S.W.2d 361, 362 (Tex. App.—Amarillo 1999, orig. proceeding) (per curiam) (same); *Posner v. Dallas Cnty. Child Welfare*

*Unit of Tex. Dep't of Hum. Servs.*, 784 S.W.2d 585, 588 (Tex. App.—Eastland 1990, writ denied) ("We hold that in civil cases as in criminal cases an appellant is not entitled to hybrid representation."). Accordingly, a trial court is not required to rule upon or accept pro se filings made by a party while he is still represented by counsel. *See In re Sondley*, 990 S.W.2d at 362. That said, here the record reflects that each of Springstun's pro se filings were filed in the record and the trial court's order granting the summary judgment in favor of the Association stated that the trial court had considered the Association's MSJ as well as "responses[,] if any, replies and arguments[.]" Therefore, the Order indicates the trial court considered Springstun's pro se filings, and we find no merit to his arguments that he was somehow denied fair treatment in the trial court.

To the extent Springstun is alleging ineffective assistance of counsel, "it is well established that the doctrine of ineffective assistance of counsel does not extend to purely civil cases." *See In re Estate of Cantrell*, No. 09-09-00219-CV, 2010 Tex. App. LEXIS 6686, at *11 (Tex. App.—Beaumont Aug.19, 2010, no pet.) (mem. op.) (citing *Green v. Kaposta*, 152 S.W.3d 839, 844 (Tex. App.—Dallas 2005, no pet.); *Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 343 (Tex. App.—Houston [14th Dist.] 2003, no pet.)). As for Springstun's argument that by dismissing his counterclaims the trial court enabled the board members of the Association to continue to harass him and retaliate against him, this allegation is

beyond the scope of this appeal. *See Beaumont Tower Venture, Ltd. v. Benckenstein, Norvell & Nathan, L.L.P.*, No. 09-96-111-CV, 1997 Tex. App. LEXIS 1490, at \*\*3-4 (Tex. App.—Beaumont Mar. 20, 1997, no writ) (mem. op.) ("Appellate courts are limited to a consideration of the record as it existed at the time summary judgment was entered.") (citing *Johnnie C. Ivy Plumbing Co. v. Keyser*, 601 S.W.2d 158, 160 (Tex. App.—Waco 1980, no writ)). Regarding Springstun's equal protection and due process arguments, we conclude those arguments are inadequately briefed. *See* Tex. R. App. P. 38.1(i). The arguments he made in the trial court were general allegations that he had been denied due process, that there had been violations of his equal protection rights and that the actions of his attorney in withdrawing from representing him caused him harm. On appeal, Springstun argues that his counsel's "prolonged withdrawal significantly prejudiced" Springstun because the trial court refused to hear any motions filed by Springstun while his counsel was still counsel of record. Springstun fails to explain how his general claims of "procedural unfairness" and being denied "meaningful access to the court[]" specifically relate to the trial court's grant of summary judgment in favor of the Association. On appeal, Springstun makes assertions of alleged constitutional violations. He fails to provide legal analysis as to how he was treated differently from other parties in other cases, he fails to identify specific discovery that he was allegedly prevented from obtaining as a result of the trial court not ruling on his pro se motions, and he fails to explain

22

how that evidence would have impacted his response to the Association's motion for summary judgment and precluded summary judgment. On appeal, Springstun argues his rights under the Fourth Amendment were violated. Springstun did not make a Fourth Amendment claim in the trial court. Accordingly, he has not preserved this constitutional complaint. *See* Tex. R. App. P. 33.1(a)(1) (party's argument on appeal must comport with its argument in the trial court to preserve error). As to his request on appeal for relief under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, those arguments also were not presented to the trial court and have been waived. *See Garza v. Harrison*, 574 S.W.3d 389, 405 (Tex. 2019) (legal issues raised for the first time on appeal are waived).

Having overruled Appellant's issues, we affirm the trial court's judgment.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on May 22, 2025
Opinion Delivered August 28, 2025

Before Golemon, C.J., Johnson and Wright, JJ.